**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HARRY SAMIT | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No: 22-3155 (CRC) |
| | * | |
| DEPARTMENT OF JUSTICE | * | |
| | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

In this action Plaintiff Harry Samit ("Mr. Samit") challenges the unconstitutional prior restraint imposed upon him by the Defendant Department of Justice ("DOJ", "Government" or "Defendant"), through its component the Federal Bureau of Investigation ("FBI") with respect to his book – "Because There *Are* Monsters" ("Manuscript") – that he submitted for prepublication classification review. So that there is no dispute, Mr. Samit is not seeking to publish *properly* classified information. He is instead seeking vindication of his First Amendment right to publish unclassified information that the FBI is seeking to unlawfully censor.

The question(s) before this Court are as straightforward as the premise of the present case. This Court need only determine (1) if it can render an immediate decision regarding the appropriateness of the FBI's classification determinations based upon the existing record or (2) if it cannot do so what further judicial inquiry should look like.

For the reasons detailed below, Mr. Samit respectfully submits this Court should grant summary judgment in his favor after conducting an *in camera* review of the unredacted Manuscript (maintained under seal to protect any perceived classified

information and Mr. Samit's copyright), along with DOJ's forthcoming supporting classified declarations and Mr. Samit's supporting materials (unredacted versions).

Should summary judgment be deemed not appropriate at this time for Mr. Samit based on the submitted written evidence, that does not mean he is not entitled to the requested remedy. The Court should still engage in further judicial inquiry to determine whether the Defendant has sufficiently defended its classification decisions. This could entail (1) allowing the respective Parties, without presence of legal counsel, to participate in an *in camera* classified discussion; (2) the discretionary appointment of a cleared Special Master to assist with the classified undertaking; and/or (3) permitting Mr. Samit's cleared legal counsel to access the alleged classified portions of the Manuscript and submit supplemental arguments, including before the aforementioned appointed Special Master if that is the case, as part of the First Amendment process.

## FACTUAL BACKGROUND

Mr. Samit served as an FBI Special Agent for more than two decades (1999-2020) and was assigned to the Minneapolis Field Office for his entire career. He served as the lead case agent on the Zacarias Moussaoui 9/11 terrorism investigation both prior to and following the terrorist attacks in New York, Washington, D.C, and Shanksville, Pennsylvania. Complaint at ¶3 (Dkt. 1)(filed October 17, 2022). See also Declaration of Harry Samit at ¶3 (dated April 12, 2024)(additional biographical information)("Samit Decl."), attached at Exhibit "1".[1]

---

[1] The Samit Declaration has been contemporaneously submitted to the FBI for prepublication review as part of the Plaintiff's secrecy obligations. Should any of its content be redacted as classified, Mr. Samit requests that an unredacted copy be made available to the Court for its consideration. Upon receipt of an approved version for release, a copy of it will be filed on the public docket.

The Manuscript "Because There *Are* Monsters" is a true crime/intelligence memoir describing Mr. Samit's first nine years assigned to the Minneapolis Joint Terrorism Task Force ("JTTF"). Following a discussion of Mr. Samit's background and quest to become an FBI Special Agent, the substantive portion of the Manuscript begins in Spring 1999 with his arrival in Minneapolis and assignment to the JTTF. The Manuscript discusses unclassified details regarding a number of investigations, both terrorism and non-terrorism, that will catch the reader's attention. The terrorism cases are particularly important not merely to illustrate what the FBI Field Office in Minneapolis was doing to thwart terrorism before 9/11, but also because they demonstrate the kinds of sophisticated, creative, and audacious steps the JTTF was taking to target Al Qaeda in the early days of the War on Terror. The Manuscript refutes the contention by FBI officials that the Minneapolis Field Office and Mr. Samit were inexperienced when the fateful events of August and September 2001 began to gather momentum. Complaint at ¶6.

The centerpiece of the Manuscript is a description of the Moussaoui investigation and trial (commonly referred to as the 20th hijacker case). In addition to a detailed narrative description of the dramatic days between the opening of the investigation on August 15, 2001, and the attacks that occurred not even one month later, Mr. Samit reveals the blunders and misconduct committed by FBI Headquarters officials, to include the events on that fateful tragic day of September 11, 2001. The Manuscript describes the four and one-half year effort to prosecute Moussaoui against the backdrop of other FBI Minneapolis counterterrorism investigations. Id. at ¶7.

Throughout the time the FBI Headquarters-run PENTTBOMB team was investigating the attacks and preparing to try Moussaoui, those in the Minneapolis Field Office were

continuing to battle Al Qaeda and arrested two other operatives – Mohammed Warsame and Mohamed Kamal El Zahabi – in 2003 and 2004, respectively. Both individuals were exceedingly dangerous Al Qaeda operatives and their stories, including El Zahabi's largely uninvestigated role as a senior figure directing the 9/11 attacks from inside the U.S., are revealed in detail for the first time. Regrettably, the two subjects escaped appropriate punishment for their crimes and the Manuscript explains why Mr. Samit believes that occurred. Id. at ¶8.

The Manuscript also discusses the FBI's efforts and activities to disperse the blame for the 9/11 attacks and ignore/conceal the cultural and organizational flaws which caused the mistakes that cost our nation so much. None of the national security investigations discussed in the Manuscript were opened later than 2003 and all were closed more than a decade ago. Id. at ¶9.

*The Prepublication Review Process*

The FBI's Prepublication Review Office ("PRO") acknowledged receipt of Mr. Samit's Manuscript on April 6, 2021. At that time, the FBI PRO estimated that consultations and research during the review process would take approximately 120 – 180 business days. Id. at ¶10. On May 24, 2021, the FBI PRO noted that "[t]here are sensitivities identified and deletions/edits will be required on a couple of pages." Id. at ¶11. On August 18, 2021, the FBI PRO informed Mr. Samit that there are "two agencies who have responded for their equities - both of which have identified sensitive information. I have two other agencies who are still finalizing review." Id. at ¶12.

On December 3, 2021, the FBI PRO followed-up and stated it was "unable to promise a closure date at this time." Id. at ¶13. On March 10, 2022, the FBI PRO notified Mr.

Samit it was "[w]aiting on final signature for first interim release. (There are redactions). Second interim is on it's [sic] way to CTD for final signoff as well. (Minor redactions)." Id. at ¶14. On August 11, 2022, the FBI PRO informed Mr. Samit that "[w]e anticipate releasing Parts 1 and 2 by September 15, 2022." It was also noted that there are five parts being reviewed. Id. at ¶15.

On September 14, 2022, eighteen and a half months after the initial submission, the FBI PRO finally responded to Mr. Samit that "Prepublication review has been finalized for your first interim release for pages 1-400 or the first two parts of your manuscript." An approval letter and a copy of the redactions required by the FBI and Other Government Agencies was provided. It was also noted that Mr. Samit's Manuscript "is exceptionally lengthy and contains extensive information on various sensitive matters requiring equally extensive research and consultations with our subject matter experts/Other Government Agencies." Id. at ¶16.

*Negotiations and Procedural Practice During Litigation*

Following the initiation of this litigation on October 17, 2022, and further processing of the Manuscript, Mr. Samit met with FBI officials on June 6, 2023, and afterwards the FBI determined that it was amenable to lifting certain disputed redactions. See Samit Decl. at *passim*. He met again with representatives of the FBI on September 7, 2023, and agreed to submit a revised Manuscript to reflect the agreements reached to date. Id. The proposed revisions were provided to the FBI on November 13, 2023, to which the FBI responded on December 22, 2023, that its review of certain of the proposed revisions had been completed, but that it needed additional time to complete its review of other proposed revisions. Id.

Counsel for the Defendant was notified on January 2, 2024, that Mr. Samit disagreed with the FBI's conclusions as to the necessity of certain redactions to the proposed revisions to the manuscript and additional information about the bases for that disagreement was provided. Id. In yet another good faith attempt to address and resolve the remaining redactions, Mr. Samit met again with the FBI on March 1, 2024, but disagreement regarding certain text remained. Id.

There are ten pages from the Manuscript regarding which the Defendant has required redactions that Mr. Samit challenges the classification of: pages 530, 532-536, 598 and 677-679. See Exhibit "2" (redacted pages – filed under seal).[2] It is Mr. Samit's contention this information is either publicly available and/or simply unclassified. Samit Decl. at *passim.*

As part of a continuing effort to minimize the need for Court intervention, Mr. Samit's undersigned counsel arranged for the Defendant's counsel to speak directly with two former Assistant U.S. Attorneys who were the lead prosecutors in the criminal matters regarding which Mr. Samit, as the lead FBI agent, has written about in his Manuscript and which comprises the text being challenged. See Declaration of Mark S. Zaid, Esq. at ¶19 (dated April 15, 2024)("Zaid Decl."), attached as Exhibit "3".

Michael Ward was the lead Department of Justice prosecutor in United States v. Mohamed Abdullah Warsame, Criminal Case No. 04-29 (D.MN)(JRT). He has specific personal knowledge that the information currently redacted as classified on pages 530, 532-536, and 598 of the Manuscript is, in fact, unclassified. See Declaration of Michael

---

[2] An appropriate Consented-To Motion to Seal these pages to protect Mr. Samit's copyright is being simultaneously filed along with this Motion. The Defendant has been requested to make the entire Manuscript available to the Court *in camera*, both to protect Mr. Samit's copyright of the document and the alleged classified information.

Ward at *passim* (dated April 2024)("Ward Decl."), attached at Exhibit "4".[3] Additionally,

W. Anders Folk was the Department of Justice's lead prosecutor in <u>U.S. v. El-Zahabi</u>,

Criminal Case No. 04-282 (D.Minn)(JRT), and has specific personal knowledge of the

information currently redacted as classified on pages 677-679 of the Manuscript as being

unclassified. <u>See</u> Declaration of W. Anders Folk at *passim* (dated April 2024)("Folk

Decl."), attached at Exhibit "5".[4]

Pursuant to the Parties' negotiations, a briefing schedule was adopted by the Court for

respective Motions for Summary Judgment. Minute Order (dated March 18, 2024).

## <u>ARGUMENT</u>

Pursuant to Federal Rules of Civil Procedure Rule 56, summary judgment should be

awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating

the appropriateness of summary judgment, the Court must view the evidence in the light

most favorable to the non-moving party, <u>Holcomb v. Powell</u>, 433 F.3d 889, 895 (D.C.

Cir. 2006), accepting the non-moving party's evidence as true, and draw "all justifiable

inferences" in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 255 (1986).

---

[3] Mr. Ward's sworn declaration has been properly submitted, pursuant to arrangements with the Defendant and prior to the filing of this Motion, for prepublication review. Once a cleared copy is returned, the undersigned will file a public version. Should any information be redacted as allegedly being classified, the Court, of course, should be provided with an unredacted copy for its *in camera* review.

[4] Mr. Folk's sworn declaration has also been properly submitted, pursuant to arrangements with the Defendant and prior to the filing of this Motion, for prepublication review. Once a cleared copy is returned, the undersigned will file a public version. Should any information be redacted as allegedly being classified, the Court, of course, should be provided with an unredacted copy for its *in camera* review.

Summary judgment should only be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. <u>Anderson</u>, 477 U.S. at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>.

Restrictions on the speech of government employees must "protect a substantial government interest unrelated to the suppression of free speech", and the restriction must be narrowly drawn to "restrict speech no more than is necessary to protect the substantial government interest." <u>McGehee v. Casey</u>, 718 F.2d 1137, 1142-43 (D.C. Cir. 1983), <u>quoting</u> <u>Brown v. Glines</u>, 444 U.S. 348, 354-55 (1980). Since the U.S. Supreme Court gave birth to the modern prepublication review system in <u>Snepp v. United States</u>, 444 U.S. 507, 509 (1980), few courts have been presented with an opportunity to flesh out the specific contours of the review that is to be conducted and more importantly how best to do so.

In <u>McGehee</u>, the D.C. Circuit ruled that "unlike FOIA [Freedom of Information Act] cases, in cases such as this both parties know the nature of information in question. Courts should therefore strive to benefit from 'criticism and illumination by [the] party with the actual interest in forcing disclosure.'" 718 F.2d at 1149. Twenty years later the D.C. Circuit refined that premise in <u>Stillman v. CIA</u>, when it instructed that in prepublication review challenges the "district court should first inspect the manuscript

8

and consider *any* pleadings and declarations filed by the Government, as well as *any*

materials filed by Stillman [].'" 319 F.3d 546, 548-49 (D.C. Cir. 2003)(emphasis added).

## I.   MR. SAMIT HAS A FIRST AMENDMENT RIGHT TO PUBLISH THE UNCLASSIFIED INFORMATION IN HIS MANUSCRIPT AND THE GOVERNMENT CANNOT INFRINGE UPON IT

To be certain, no one has the right to publish *properly* classified information. See

Snepp, 444 U.S. at 510. That has never been in dispute in this litigation and never will be.

But it is well-settled that secrecy agreements, such as those executed by Mr. Samit

over the course of serving for more than two decades as a Special Agent of the FBI, do

not extend to "unclassified materials or to information obtained from public sources."

McGehee, 718 F.2d at 1148-49. The government may not censor such material,

"contractually or otherwise." United States v. Marchetti, 466 F.2d 1309, 1313 (4th Cir.

1972), cert. denied, 409 U.S. 1063 (1972). "[A]ny secrecy agreement which purports to

prevent disclosure of unclassified information would contravene First Amendment

rights." Id. at 1317. See also Snepp, 444 U.S. at 513 n.8 ("if in fact information is

unclassified or in the public domain, neither the CIA nor foreign agencies would be

concerned"); Wilson v. CIA, 586 F.3d 171, 185 (2d Cir. 2009)("[t]he government has no

legitimate interest in censoring unclassified material"); Stillman, 319 F.3d at 548 ("If, on

the other hand, the information was not classified properly, then Stillman may publish the

manuscript."); Shaffer v. Def. Intelligence Agency, 102 F. Supp. 3d 1, 9 (D.D.C. 2015)

("Nonetheless, when a manuscript contains information that is unclassified, wrongly-

classified, or derived from public sources, the Government may not censor such

material.").

The purpose of this lawsuit is strictly to challenge the propriety of the DOJ/FBI's classification decisions and determine whether they infringe upon Mr. Samit's First Amendment rights. See United States v. Snepp, 897 F.2d 138, 143 (4th Cir. 1990) (explaining prepublication review process: "If the Agency denies approval, [the employee] may not publish the manuscript. If [the employee] wishes to publish a manuscript in spite of the Agency's denial of approval without violating his secrecy agreement, then he must institute an action for judicial review of the Agency decision."). This is because Mr. Samit "has a strong first amendment interest in ensuring that [Government] censorship of his [documents] results from a proper classification of the censored portions." McGehee, 718 F.2d at 1148; see also Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362, 1367 (4th Cir. 1975)("We thus move to the conclusion that the deletion items should be suppressed only if they are found both to be classified and classifiable under the Executive Order."), cert. denied, 421 U.S. 992 (1975).

The D.C. Circuit has noted that because First Amendment rights are implicated in prepublication review cases such as this one:

> we feel compelled to go beyond the FOIA standard of review for cases reviewing CIA censorship pursuant to secrecy agreements. While we believe courts in securing such determinations should defer to CIA judgment as to the harmful results of publication, they must nevertheless satisfy themselves from the record, in camera or otherwise, that the CIA in fact had good reason to classify, and therefore censor, the materials at issue.

McGehee, 718 F.2d at 1148. Thus, it is the obligation of this Court in its judicial oversight capacity to ensure that the Defendant defends its classification determinations with "reasonable specificity, demonstrate[s] a logical connection between the deleted

information and the reasons for classification," Id. at 1148-49. These should not rely on a "presumption of regularity" if such rational explanations are missing. Id. at 1149.

> But while the CIA's tasks include the protection of the national security and the maintenance of the secrecy of sensitive information, the judiciary's tasks include the protection of individual rights. Considering that "speech concerning public affairs is more than self-expression; it is the essence of self-government," and that the line between information threatening to foreign policy and matters of legitimate public concern is often very fine, see New York Times Co. v. United States, 403 U.S. 713, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971), courts must assure themselves that the reasons for classification are rational and plausible ones.

McGehee, 718 F.2d at 1149.

As part of this process, and obviously to help assist the Court to render an informed decision, the Court must have available to it in unredacted form the various documents drafted by and/or submitted by Mr. Samit to the FBI, as well as the sworn declarations executed by the former prosecutors who handled the subject matter prosecutions at issue in this case, that address the substantive redactions and demonstrate they are unclassified and/or in the public domain.[5]

## A. The Information Redacted By The Defendant Is Provably Unclassified Or In The Public Domain And Therefore Is Being Unconstitutionally Censored

The Supreme Court in the foundational Snepp case noted that information found in the public domain would not be of concern to the U.S. Government. Id., 444 U.S. at 513 n.8. See also Washington Post v. Dep't of Defense, 766 F. Supp. 1, 10 (D.D.C. 1991) (unofficial disclosures of information or official disclosures of similar yet not identical information may not be ignored by agency in making its classification decisions)

---

[5] Obviously, the documents that were provided by Mr. Samit to the FBI as part of the Parties' substantive meetings and conversations are not able to be filed with the Court by Mr. Samit given the asserted classification determinations. Thus, this Court should require the Defendant to ensure it has *in camera* access to all relevant materials that comprised the administrative process before ruling upon any dispositive motions.

(citations omitted). Additionally, the D.C. Circuit in <u>McGehee</u> reiterated the Supreme Court's concept from <u>Snepp</u> by stating that "when the information at issue derives from public sources, the agent's special relationship of trust with the government is greatly diminished if not wholly vitiated." <u>McGehee</u>, 718 F.2d at 1141. What needs to be emphasized, but is so often lost in prepublication review cases, is that this First Amendment challenge process is not one of declassification, as is otherwise seen when litigation is pursued under the Freedom of Information Act, 5 U.S.C. § 552 <u>et. seq.</u> As was noted more than thirty years ago, the Government conceded – and, in fact, argued for the proposition – that:

> when the government preclears a book, it does not certify that every fact in that book is accurate. Indeed, it is possible that the Government might purposefully, with or without the knowledge of the author, allow misinformation to be published. <u>See, e.g.</u>, <u>Military Audit Project [v. CIA]</u>, 656 F.2d [724] at 744 [D.C. Cir. 1981](speculating that information revealed in a book by former CIA director William Colby represented a "fallback story" meant to cover up the true purposes of a CIA operation). More generally, books precleared by the government "are received as the private product of their authors, like any other memoirs, and are accorded such respect as their content seems to deserve." <u>Afshar[v. Dep't of State]</u>, 702 F.2d [1125] at 1134 [D.C. Cir. 1983]. As a consequence, there is no reason to presume that books subject to prepublication review are reliable.

<u>Washington Post</u>, 766 F. Supp. at 11-12.

Mr. Samit acknowledges he has the burden to provide the Government with proof that the information at issue is actually derived exclusively from public, open source materials. <u>McGehee</u>, 718 F.2d at 1141 n.9. This premise was reaffirmed in <u>Boening v. CIA</u>, 579 F. Supp. 2d 166, 171 (D.D.C. 2008), when the District Court specifically cited to this same footnote from <u>McGehee</u> in ruling that if the plaintiff wanted to argue the information was being improperly classified due to it being exclusively derived from

public, open-source materials it was incumbent upon him to provide adequate citations to those sources. <u>Boening</u>, 579 F. Supp. 2d at 171.

The District Court noted that because of the insufficiency of Boening's citations in his declaration the Court could not engage in a meaningful review and determine if the classification determinations were proper. <u>Id</u>. It was for that reason that, although summary judgment was ultimately awarded to the CIA, the District Court specifically highlighted its willingness to reconsider the ruling *if* Boening returned with the necessary specific citations to the public, open-source materials upon which he had relied in the context of the individual classified redactions. <u>Id</u>. at 171-72.

To Mr. Samit, the point is clear: if he can provide – and he believes he has sufficiently provided – evidence of specific citations to public, open-source materials (or unclassified) upon which he exclusively relied in crafting the disputed portions of his Manuscript, it would not matter that the Government claims that information is classified, even if properly somewhere else within its files. The principles of <u>Snepp</u>, <u>McGehee</u>, <u>Boening</u> and <u>Washington Post</u> permit this Court to conclude the Defendant's classification assertions are insufficient to overcome Mr. Samit's First Amendment rights to publish his written information given properly sourced unclassified information. Presumably, as in many prior similar proceedings, the Defendant will agree that this Court must review the entirety of the unredacted materials in the existing record, including the information Mr. Samit provided to the FBI and the submitted supporting sworn declarations by Messrs. Ward and Folk. <u>See e.g.</u> Exhibits "1", "4" and "5".

**B. This Court Must Respectfully Conduct An *In Camera* Review Of DOJ's Forthcoming Classified Declarations, Mr. Samit's Supporting Declarations, Other Documents Provided To FBI As Part Of The Administrative Proceedings, And An Unredacted Copy Of The Manuscript[6]**

Prepublication classification disputes are, of course, shrouded in secrecy and require more from the Court than is seen in other, normal, cases. "[I]n camera review of affidavits, followed if necessary by further judicial inquiry, will be the norm" with the "appropriate degree of deference" given to the Executive Branch concerning its classification decisions. Stillman, 319 F.3d at 548. As with FOIA cases, Courts must review classification decisions in prepublication review cases *de novo*. See Shaffer, 102 F. Supp. 3d at 10. The primary point of substantive contention in the present case is whether the remaining redactions in dispute are properly classified or can be sourced to unclassified public domain information.

Although the forthcoming government declarations regarding national security matters are certainly to be afforded deference, a point of contention that is not in dispute is that federal courts have been clear in stating that they will not simply serve as "rubber stamps" for Executive Branch assertions. See McGehee, 718 F.2d at 1149 (courts should require "logical connection" between deleted information and reasons for classification); See also Wilson v. McConnell, 501 F. Supp. 2d 545, 553 (S.D.N.Y. 2007)(collecting cases). There should be no dispute that the Executive Branch does not have sole authority in this arena and federal courts can overrule Executive Branch determinations. See Holder v. Humanitarian Law Project, 561 U.S. 1, 27-28 (2010)(applying "rigorous

---

[6] For purposes of protecting Mr. Samit' copyright interests in his Manuscript and, of course, to ensure the integrity of the alleged classified information, Mr. Samit respectfully requests that a copy of his unredacted Manuscript be filed by DOJ under seal for the Court's consideration.

scrutiny," and rejecting "intermediate scrutiny," in context of statute that criminalized knowing provision of material support to terrorist organizations standard); In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders, 562 F. Supp. 2d 876, 882 (S.D. Tex. 2008)(nondisclosure requirements in connection with FBI surveillance orders subject to "rigorous scrutiny"); cf. Defense Distributed v. United States Dep't of State, 838 F.3d 451, 466 (5th Cir. 2016)(under strict scrutiny analysis plaintiff's First Amendment rights violated as unconstitutional prior restraint, despite State Department's national security concerns).

Simply asserting that information is classified under an applicable Executive Order does not meet the Government's burden to justify the disclosure in the face of such rigorous scrutiny. Al-Haramain v. Bush, 507 F.3d 1190, 1203 (9th Cir. 2007)("[s]imply saying 'military secret,' 'national security,' . . . 'terrorist threat' or invoking an ethereal fear that disclosure will threaten our nation is insufficient" to justify content-based restraint on speech). See also 50 U.S.C. § 3161 (Congress required President to "establish procedures to govern access to classified information which shall be binding upon all departments, agencies, and offices of the executive branch of Government.")(emphasis added).

It was for all the reasons above that the D.C. Circuit in Stillman specifically indicated in camera review of the allegedly classified materials would be the norm in prepublication review cases. 319 F.3d at 548. The Circuit clearly anticipated that it would engage in a full review of the record. See id. at 548-49 (referring to need to "inspect the manuscript" as well as review pleadings submitted by plaintiff).

Mr. Samit has provided the FBI with sufficient unclassified and public domain information to overcome the Defendant's classification assertions. <u>See</u> Samit Decl. at *passim*. Arrangements were made by Mr. Samit's counsel for the Defendant's counsel to receive confirming unclassified information from the very DOJ prosecutors who handled the criminal cases that are discussed in the Manuscript. Zaid Decl. at ¶19. Both of these former prosecutors have provided sworn declarations in support of Mr. Samit's Motion for Summary Judgment that reaffirm their views that the redacted information is unclassified. Mr. Ward specifically addresses pages 530, 532-536, and 598 of the Manuscript, <u>see</u> Exhibit "4" at *passim*, and Mr. Folk addresses pages 677-679. <u>See</u> Exhibit "5" at *passim*.

While Mr. Samit believes this evidence is sufficient to demonstrate he is entitled to summary judgment, he and his counsel stand ready to assist this Court if it chooses to pursue "further judicial inquiry" prior to rendering its decision. That inquiry can take a number of forms, including, but not limited to, the proposals set forth below.

> 1. <u>Mr. Samit And A Government Representative (Non-Attorney) Should Be Permitted To Participate In An *In Camera* Adversarial Proceeding Before The Court To Debate FBI's Classification Determinations</u>

As discussed below, many of the prepublication classification review disputes that have litigated how best the judicial review process should proceed have dealt with counsel's access to the classified information. But another option short of reaching the <u>Stillman</u> constitutional question of determining whether to have the Judicial Branch mandate to the Executive Branch who must be granted access to classified information is to allow Mr. Samit, as the Plaintiff, to appear, along with a non-attorney DOJ/FBI classification expert, *in camera* in a classified session to present his substantive case.

16

Obviously, Mr. Samit has authorized access to all of the information contained within his Manuscript as well as his supporting documentation which he presented to FBI. If he were permitted to appear before this Court to actually advocate his case, that would go a long way towards ensuring proper due process is provided to him, but which still protects the national security interests of the United States. See Wright v. FBI, 2006 U.S. Dist. LEXIS 52389, *23 (D.D.C. July 31, 2006)("the FBI, by its very nature, is not an open institution, and very few people are knowledgeable about its inner operations. For that very reason, the views of knowledgeable, informed, experienced 'insiders' are of particular utility.").

So that the Government does not turn this request into the Battle of the Bulge, the Court should understand that this exact type of meeting has already occurred. Mr. Samit personally met with the FBI and relevant decision-makers on three occasions (June 6, 2023, September 7, 2023, and March 1, 2024) to discuss the substance of the classified redactions. Samit Decl. at *passim*; Zaid Decl. at ¶¶16-17. That is when he discussed the alleged classified information that is being challenged before the Court. The good-faith objective of the effort was to persuade FBI to reconsider its classification decisions, but obviously that internal effort ultimately failed with respect to the information still being challenged. All Mr. Samit seeks now is to repeat that same effort and circumstances with this Court in the hope the results may very well – and given this is a *de novo* review can – be different. There is no sound reason that the same type of discussion cannot simply occur in front of this Court in a secure environment.

This Court possesses absolute discretionary authority to decide that classified information can be presented to it as part of this civil proceeding. See De Sousa v. Dep't

of State, et al., 840 F. Supp. 2d 92, 104-5 (D.D.C. 2012)("Upon review of the most

pertinent authorities, the Court believes that it has the discretion to order disclosure of

classified information to the Court in a civil case where the information is material to the

resolution of disputed legal issues and where alternatives to reliance upon classified

information are inadequate to satisfy the interests of justice.")(citations omitted). This is

simply a function of the long-standing recognized discretionary authority that can be

exercised by this Court as to how briefing procedures before it may be handled. See also

Webster v. Doe, 486 U.S. 592, 604 (1988)("[T]he District Court has the latitude to

control any discovery process … so as to balance respondent's need for access to proof

which would support a colorable constitutional claim against the extraordinary needs of

the CIA for confidentiality and the protections of its methods, sources, and mission.");

Nixon v. Sirica, 487 F.2d 700, 713 (D.C. Cir. 1973)(century of legal experience has

taught "courts have broad authority to inquire into national security matters so long as

proper safeguards are applied to avoid unwarranted disclosure").

> 2. This Court Should Also Respectfully Consider Appointment Of A Special
>    Master To Assist With The Classification Dispute

Another option to implement this process would be for the Court, pursuant to Rule 53

of the Federal Rules of Civil Procedure, to appoint a Special Master who holds the

appropriate security clearances for limited purposes to assist in the review efforts. In fact,

such discretionary authority has been favorably exercised by federal courts to resolve

classification disputes. See In re United States Dep't of Defense, 848 F.2d 232, 239 (D.C.

Cir. 1988)(District Court had authority to appoint Special Master to review random

sampling of classified materials in FOIA case); see also ACLU v. Dep't of Defense,

339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004)(noting Court's authority to create procedures for cleared special master to review classified materials); United States v. Progressive, Inc., 467 F. Supp. 990, 997 (W.D. Wis. 1979)(appointing panel of subject matter experts as mediators to resolve dispute over Restricted Data).[7]

It cannot be disputed that in prepublication classification review challenges, as is common in FOIA cases involving classified information, "the Court and the plaintiff will be denied the truth-testing benefits of an adversary proceeding." In re United States Dep't of Defense, 848 F.2d at 234. In fact, the D.C. Circuit was particularly supportive of the District Court's exercise of its FRCP Rule 53 authority when the "the judge has no access to impartial expert witnesses or other features of the adversary process in order to assist him in making his decision about disclosure." 848 F.2d at 236. That is exactly the type of "exceptional" situation envisioned by FRCP Rule 53 that is faced by Mr. Samit and this Court.

If this Circuit has favorably supported the exercise of discretionary authority by the District Court in classified FOIA cases, which are simply based on statutory authority with no regard to the identity of the requester, see Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974); Meeropol v. Meese, 790 F.2d 942, 961 (D.C. Cir. 1986), it can only be that this authority is heightened in favor of a Plaintiff

---

[7] In fact, there is even precedent for this Court to hold a full-blown trial to resolve the prepublication classification decisions and require senior Government officials to testify. See Alfred A. Knopf, Inc., 509 F.2d at 1369. This, too, is something the Court should consider.

whose constitutional First Amendment rights are in play and potentially facing extinguishment.[8] That, too, is exactly the situation faced by Mr. Samit and this Court.

This reflects not one but two viable options available to this Court – if necessary – to ensure it not only has a complete record before it prior to reaching a determination on summary judgment but also still protects Mr. Samit' First Amendment rights.

## II. ALTERNATIVELY, AT THE APPROPRIATE TIME, THE COURT SHOULD CONSIDER AUTHORIZING MR. SAMIT' COUNSEL'S ACCESS TO CLASSIFIED INFORMATION

### A. This Court Retains The Authority And Discretion To Order Further Proceedings To Attempt to Resolve The Classification Dispute, Including, But Not Limited To, Permitting Mr. Samit And/Or His Cleared Legal Counsel To Have Access To The Classified Manuscript, Any Submitted Supporting Materials And Possibly Forthcoming Defendant's Declarations

If notwithstanding taking all of the above steps, this Court is not in a position to grant Mr. Samit summary judgment but it reasonably believes the assistance of the undersigned counsel would be valuable and necessary, then the <u>Stillman</u> threshold has been met, <u>see</u> 319 F.3d at 548-49. The Court can then authorize the involvement of Mr. Samit's cleared counsel to present a complete and comprehensive argument to this Court.[9]

The Executive Branch cannot dictate to this Court how information, even when classified, is presented to it. <u>De Sousa</u>, 840 F. Supp. 2d at 104-5. The Government should not be permitted an unfair litigation advantage to the detriment of Mr. Samit's First

---

[8] Notably, this option is one that has been supported by conservative and liberal Justices alike, <u>see</u> <u>United States v. Zubaydah</u>, 142 S. Ct. 959, 996, 212 L.Ed.2d 65, 107 (2022)(J. Gorsuch/J. Sotomoyer, dissent).

[9] Mr. Samit's undersigned counsel hold active TOP SECRET clearances (with possible SCI eligibility). Zaid Decl. at ¶11. Additionally, Mr. Zaid has been previously designated an expert witness by a federal judge in a prepublication classification review case. <u>Bissonnette v. Podlaski</u>, 2018 U.S. Dist. LEXIS 94198, *54-*63, (June 5, 2018, N.D. Ind.).

Amendment rights when the <u>Stillman</u> standard has been met. <u>See</u> <u>Stillman v. DoD et al.</u>, 209 F. Supp. 2d 185, 224 fn. 26 (D.D.C. 2002)(only conclusion possible for CIA decision to deny plaintiff and his counsel's access to classified document is solely to "gain advantage in litigation"), <u>rev'd on other ground</u>, <u>Stillman</u>, 319 F.3d 546. <u>See</u> <u>also</u> <u>EEOC V. EMC Corp.</u>, 2000 U.S. App. LEXIS 1941, *50 (6th Cir. Feb. 8, 2000)("The courts should not tolerate blatant disregard for, and/or manipulation of, the law, designed to secure an unlawful litigation advantage by a representative of the United States government who was entrusted with the just and even-handed prosecution of a citizen's complaint").

Under appropriate circumstances, it is entirely permissible and justified for this Court to authorize involvement of Mr. Samit's counsel.

> The court should then determine whether it can, consistent with the protection of Stillman's first amendment rights to speak and to publish, and with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue without the assistance of defense counsel. If not, then the court should consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security. Only then should it decide whether to enter an order granting Mr. Zaid access to the manuscript and, if similarly necessary, to the Government's classified pleadings and affidavits. If the court enters such an order, then the Government may appeal and we will have to resolve the constitutional question.

<u>Stillman</u>, 319 F.3d at 549-550. <u>See also Colby v. Halperin</u>, 656 F.2d 70, 73 (4th Cir. 1981)("demonstration of a strong necessity" would permit counsel to access classified information)(FOIA case).

Following this step, Mr. Samit and his undersigned counsel can take the appropriate steps to prepare and submit through secure means supplemental arguments to assist the Court in rendering an informed decision as to the appropriateness of DOJ/FBI's

classification determinations. Additionally, either directly and/or through an appointed Special Master, *in camera* arguments can take place to allow a full proper adversarial hearing regarding the Defendant's classification determinations.

## **CONCLUSION**

For the foregoing reasons, Mr. Samit's Motion for Summary Judgment should be granted.

Date: April 15, 2024

Respectfully submitted,

*s/Mark S. Zaid*
_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for the Plaintiff