UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARRY SAMIT,

*Plaintiff,*

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant.*

Civil Action No. 22-3155 (CRC)

**COMBINED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 3

    A.    Plaintiff's Government Employment ..................................................... 3

    B.    The Government's Review of Plaintiff's Manuscript ............................. 4

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT .................................................................................................................. 6

I.     THE GOVERNMENT HAS NOT VIOLATED ANY FIRST AMENDMENT
RIGHT TO PUBLISH. ............................................................................................ 6

    A.    As Plaintiff Concedes, He Has No Right To Publish Classified
Information. ........................................................................................ 6

    B.    The FBI Properly Classified the Information At Issue Here. ................ 8

         1.    Original Classification Authority ............................................. 11

         2.    Governmental Ownership, Production, or Control ................... 11

         3.    The Section 1.4 Categories ..................................................... 12

         4.    Damage to the National Security ............................................. 12

    C.    The Classified Information At Issue Has Not Been Declassified or
Released. ............................................................................................ 13

II.    AS AN INITIAL MATTER, THE COURT'S REVIEW IS LIMITED TO IN
CAMERA, EX PARTE REVIEW. ............................................................................ 15

III.   PLAINTIFF'S UNREASONABLE DELAY CLAIM IS MOOT. ................................. 19

CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Afshar v. Dep't of State,*
  702 F.2d 1125 (D.C. Cir. 1983) ............................................................................... 14

*Alfred A. Knopf, Inc. v. Colby,*
  509 F.2d 1362 (4th Cir. 1975) ........................................................................... 11, 14

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................................ 5, 6

*Boening v. CIA,*
  579 F. Supp. 2d 166 (D.D.C. 2008) ................................................................... 19, 20

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................................. 6

*Chicago & S. Air Lines v. Waterman S.S. Corp.,*
  333 U.S. 103 (1948) ................................................................................................. 9

*Clarke v. United States,*
  915 F.2d 699 (D.C. Cir. 1990) ............................................................................... 19

*Colby v. Halperin,*
  656 F.2d 70 (4th Cir. 1981) ................................................................................... 18

*Conservation Force, Inc. v. Jewell,*
  733 F.3d 1200 (D.C. Cir. 2013) ............................................................................. 20

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.,*
  331 F.3d 918 (D.C. Cir. 2003) ............................................................................ 8, 10

*\*Dep't of Navy v. Egan,*
  484 U.S. 518 (1988) ....................................................................... 9, 10, 17, 18

*Ellsberg v. Mitchell,*
  709 F.2d 51 (D.C. Cir. 1983) ................................................................................. 18

*Fitzgibbon v. CIA,*
  911 F.2d 755 (D.C. Cir. 1990) ............................................................................... 14

*Frugone v. CIA,*
  169 F.3d 772 (D.C. Cir. 1999) ................................................................................. 8

*Gardels v. CIA,*
  689 F.2d 1100 (D.C. Cir. 1982) ............................................................................... 9

*Halkin v. Helms*,
    598 F.2d 1 (D.C. Cir. 1978) ........................................................................... 8, 10

*Halperin v. CIA*,
    629 F.2d 144 (D.C. Cir. 1980) ....................................................................... 9, 12

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003) ............................................................................ 15

*In re Department of Defense*,
    848 F.2d 232 (D.C. Cir. 1988) ............................................................................ 17

*In re Terrorist Attacks on Sept. 11, 2001*
    523 F. Supp. 3d 478 (S.D.N.Y. 2021) ................................................................ 17

*Malizia v. U.S. Dep't of Just.*,
    519 F. Supp. 338 (S.D.N.Y. 1981) ..................................................................... 13

*\*McGehee v. Casey*,
    718 F.2d 1137 (D.C. Cir. 1983) ................................................................. *passim*

*Penn v. Blinken*,
    No. 21-cv-1055, 2022 WL 910525 (D.D.C. May 29, 2022) ................................. 20

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) .............................................................................................. 6

*Pub. Citizen v. Dep't of State*,
    11 F.3d 198 (D.C. Cir. 1993) .............................................................................. 14

*Shaffer v. Def. Intel. Agency*,
    102 F. Supp. 3d 1 (D.D.C. 2015) ............................................................... *passim*

*\*Snepp v. United States*,
    444 U.S. 507 (1980) ...................................................................................... 1, 7, 8

*\* Stillman v. CIA*,
    319 F.3d 546 (D.C. Cir. 2003) ................................................................... *passim*

*Stillman v. CIA*,
    517 F. Supp. 2d 32 (D.D.C. 2007) ........................................................... 8, 19, 20

*Taylor v. Dep't of Army*,
    684 F.2d 99 (D.C. Cir. 1982) ............................................................................... 8

*Transwestern Pipeline Co. v. FERC*,
    897 F.2d 570 (D.C. Cir. 1990) ............................................................................ 19

*United States v. Curtiss-Wright Exp. Corp.*,
 299 U.S. 304 (1936)............................................................................................ 9

*United States v. Marchetti*,
 466 F.2d 1309 (4th Cir. 1972) ........................................................................ 7, 10

*United States v. Nat'l Treasury Emps. Union*,
 513 U.S. 454 (1995)............................................................................................ 6

**RULES**

Fed. R. Civ. P. 53 ............................................................................................... 16

Fed. R. Civ. P. 56 ............................................................................................ 1, 5

**REGULATIONS**

Exec. Order 13526,
 75 Fed. Reg. 707 (Dec. 29, 2009)............................................................ *passim*

iv

## INTRODUCTION

Plaintiff Harry Samit is a former special agent with the Federal Bureau of Investigation (FBI), a component of the U.S. Department of Justice (DOJ).    This case concerns the prepublication review of a manuscript that Samit seeks to publish under the title *Because There Are Monsters.*    The manuscript details Plaintiff's experience as a special agent, including his assignment to the FBI's Joint Terrorism Task Force at the Minneapolis Field Office prior and subsequent to the events of September 11, 2001.    Samit claims that (1) the government has prohibited him from publishing unclassified information contained in the manuscript in violation of the First Amendment; (2) the government's completion of its review of the manuscript was unreasonably delayed; (3) Samit and his counsel should have access to classified information about this case; and (4) Samit and his counsel should have access to a secure government computer to utilize for this litigation.    Each of these claims fails.    Accordingly, the Court should enter judgment for Defendant.

It is well established that "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam). To vindicate that interest here, the FBI required Samit to sign agreements obligating him to protect classified information to which he had access during his time as a special agent, including in the course of his duties related to counterterrorism.    Under those agreements, Samit is prohibited from disclosing classified information and must submit proposed writings for prepublication review.    Despite these prior agreements, Samit now asks this Court to conclude that the FBI violated his First Amendment rights when it determined that certain information that he seeks to publish is classified and therefore cannot be disclosed.

This claim fails because the FBI properly determined that certain information contained in the manuscript is classified, and Samit has no First Amendment right to publish that classified information.  After careful consideration, the FBI found that certain portions of Samit's manuscript contain information that, if released, would cause serious harm to national security.  The FBI then carefully segregated specific portions of the manuscript containing classified information that Samit cannot publish from the other details about his experience as a special agent that he is permitted to publish.  After meeting several times, the parties have resolved the majority of their disputes, winnowing the issues remaining down to the FBI's classification determinations as to approximately 3 of the manuscript pages.

These classification determinations are in line with the requirements of Executive Order 13256, which governs national security information.  As support, and consistent with the way in which these cases are litigated, the FBI is lodging solely for the Court's ex parte, in camera review a classified declaration.  *See Stillman v. CIA*, 319 F.3d 546, 549 (D.C. Cir. 2003) (national security concerns require ex parte, in camera review of government's classified declaration in prepublication review cases).[1]  The agency's determination that disclosure of information in Samit's manuscript reasonably could be expected to result in harm to national security, as demonstrated in the declaration, is entitled to the utmost deference.  Indeed, there is no more compelling governmental interest than national security, and courts should not second guess the Executive Branch's reasoned, articulated concerns about the harm to national security that could result from the disclosure of secret government information.  Under this well-established

---

[1] The classified declaration contains highly sensitive information regarding the bases for the FBI's classification decisions.  Neither Samit nor his counsel are authorized to access this classified information. Thus, national security concerns require the Court to review them ex parte and in camera.

framework, the Court should conclude, based on its review of the classified declaration submitted in support of this motion, that the classification of the information at issue was proper.

Because ex parte, in camera review of the declaration lodged by the FBI is sufficient for the Court to determine that the disputed information is properly classified, there is no need for the Court to engage in further inquiry of the type Samit proposes. *See Stillman*, 319 F.3d at 548–49. Specifically, it would be both unnecessary and unprecedented for the Court to hear factual arguments from non-attorneys regarding classification decisions or to appoint a special master to second-guess the Executive Branch's classification determinations in a prepublication review case, as Samit suggests. The Court should also reject Samit's claim that the FBI must provide his counsel with access to classified information (or to a secure government computer). This argument is premature—and foreclosed by binding precedent where the Court can resolve this dispute based on ex parte, in camera review of classified information submitted by the government. Finally, to the extent Samit continues to press his unreasonable delay claim, it is moot because the FBI has already issued the final determination that Samit sought.

For these reasons, as set forth more fully below, the Court should deny Plaintiff's motion for summary judgment, grant Defendant's cross-motion, and enter judgment in Defendant's favor.

## BACKGROUND

### A.     Plaintiff's Government Employment

Harry Samit served as a special agent in the FBI's Minneapolis Field Office from 1999 to 2020. Def.'s Stmt. of Mat'l Facts (SOF) ¶ 1. During his tenure with the FBI, Samit was assigned to the Joint Terrorism Task Force (JTTF) and, among other assignments, worked on the investigations of Mohammed Warsame, Mohamed Kamal Elzahabi, and Zacarias Moussaoui. *Id.* In his role as a special agent, Samit held a security clearance allowing him access to classified

information.  SOF ¶ 2.  As a condition of that clearance, Samit entered into agreements that forbid him from publishing or otherwise disclosing classified information without prior authorization from the agency responsible for the classification of the information or that last granted Samit a security clearance.  SOF ¶ 3; *see also* Exhibit B to Declaration of Robert R. Wells, Classified Information Nondisclosure Agreements between Harry Samit and the United States (signed by Samit on May 20, 2019; May 17, 2004; and January 20, 1999).

**B.    The Government's Review of Plaintiff's Manuscript**

Samit seeks to publish a book about his government experience—particularly his work as a special agent serving on the JTTF and on counterterrorism investigations—titled *Because There Are Monsters*.  SOF ¶ 4.  Pursuant to the terms of the agreements he signed with the FBI, in April 2021, Samit submitted a prepublication copy of his manuscript, which spanned over 900 pages, to the FBI for review. SOF ¶ 5.  Due to the length of the manuscript, the FBI released approved versions of the manuscript, redacted to remove specific protected information that cannot be released, in multiple tranches, beginning in September 2022 and concluding with the final release in December 2022.  SOF ¶ 6.  Samit appealed each of the interim releases; the FBI finalized the appeal of the third tranche of the manuscript in March 2023. SOF ¶ 7.  Samit filed this lawsuit in October 2022, following the FBI's release of the first tranche of the manuscript but before the conclusion of its review of the manuscript.  Compl., ECF No. 1.

Following the finalization of Samit's appeals, representatives from the FBI held productive in-person meetings with Samit on June 6, 2023 and September 7, 2023.  SOF ¶ 8.  On November 13, 2023, Samit provided the FBI with proposed revisions to nine disputed pages in the manuscript: pages 530, 532 to 536, and 598, which pertain to the FBI's investigation of Mohammed Warsame; and pages 677 to 679, which pertain to the FBI's investigation of Mohamed

Elzahabi. SOF ¶ 10.  The FBI provided Samit on December 22, 2023 its position that targeted redactions remained necessary to protect specific classified information contained in the revised version of pages 677 to 679, pertaining to the FBI's investigation of Mohamed Elzahabi. SOF ¶ 11; *see also* Exhibit F to Wells Decl. (Samit's proposed revision to pp. 677–679, unredacted with classified information highlighted).  Samit disputes that these redactions are necessary.

Representatives from the FBI and Samit had another in-person meeting on March 1, 2024, focusing on Samit's claims that certain information discussed in the manuscript had been independently developed in an unclassified manner.  SOF ¶ 12.  Shortly after this meeting, the Court ordered the parties to propose a briefing schedule for summary judgment, which the Court subsequently entered.  *See* ECF No. 26;  *see also* Minute Order (Mar. 18, 2024); Minute Entry (Mar. 7, 2024).  In submitting the proposed briefing schedule, the parties noted their intent "to continue to consider in good faith whether it is possible to narrow or eliminate any remaining areas of dispute between the parties."  ECF No. 26 at 2.

Consistent with this plan, in May 2024, the FBI provided to Samit proposed revisions that were approved for public release of the pages of the manuscript pertaining to the FBI's investigation of Mohammed Warsame.  SOF ¶ 13.  Samit agreed that the proposed rewrite resolved the parties' dispute as to those pages.  SOF ¶ 13.  Accordingly, only Plaintiff's challenges to the redactions on pages 677 to 679, pertaining to the FBI's investigation of Mohamed Elzahabi, remain outstanding and require adjudication by the Court.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 mandates that summary judgment be entered for a party who shows that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246

(1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In deciding a motion for summary judgment in prepublication review cases involving the government's classification decisions about national security information, district courts must give the government sufficient opportunity to present detailed in camera, ex parte affidavits, and accord substantial weight to those affidavits concerning the classified nature of the information in question.  *See Stillman*, 319 F.3d at 548–49 (in prepublication review cases "*in camera* review of affidavits, followed if necessary by further judicial inquiry, will be the norm" with the "appropriate degree of deference" given to the Executive Branch's classification decisions).

## ARGUMENT

### I.    THE GOVERNMENT HAS NOT VIOLATED ANY FIRST AMENDMENT RIGHT TO PUBLISH.

#### A.  As Plaintiff Concedes, He Has No Right To Publish Classified Information.

A former government employee who voluntarily agreed to nondisclosure obligations—like Samit—has no First Amendment right to publish classified information.  As a general matter, the speech rights of public employees are subject to a balancing test that weighs "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). As part of this balancing, courts will accept "restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995).

6

A line of binding precedent, including from the Supreme Court, establishes that the government's interest in protecting classified information outweighs any interest that a current or former employee may have in publishing that information. In *Snepp v. United States*, the government sued a former employee who had published a book about his government experience without first submitting it for prepublication review and approval, as he was required to do under a secrecy agreement he had entered into as a condition for being granted a security clearance and by virtue of his position of trust with the government.  444 U.S. 507 (1980).  The Supreme Court observed that the government "has a compelling interest in protecting . . . the secrecy of information important to our national security," *id.* at 509 n.3, and imposed a constructive trust over all proceeds from the book to remedy the breach of trust, *id.* at 514.  *See also United States v. Marchetti*, 466 F.2d 1309, 1315 (4th Cir. 1972) ("Citizens have the right to criticize the conduct of our foreign affairs, but the Government also has the right and the duty to strive for internal secrecy about the conduct of governmental affairs in areas in which disclosure may reasonably be thought to be inconsistent with the national interest.").

Following *Snepp*, courts in this Circuit have consistently rejected First Amendment challenges by former government employees to nondisclosure obligations they undertook with respect to classified information, holding that the government's interest in keeping such information secret prevails.  *See McGehee v. Casey*, 718 F.2d 1137, 1143 (D.C. Cir. 1983) (CIA's "censorship of 'secret' information contained in former agents' writings and obtained by former agents during the course of CIA employment does not violate the first amendment"); *see also Stillman*, 319 F.3d at 548  ("If the Government classified the information properly, then Stillman simply has no first amendment right to publish it."); *Shaffer v. Def. Intel. Agency*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015) ("The law in this Circuit is clear: current and former government employees

have no First Amendment right to publish properly classified information to which they gained access by virtue of their employment."); *Stillman v. CIA*, 517 F. Supp. 2d 32, 38 (D.D.C. 2007) ("Courts have uniformly held that current and former government employees have no First Amendment right to publish properly classified information to which they gain access by virtue of their employment.").

As this line of precedent makes clear, as a result of his secrecy agreement and his position of trust with the government, Samit has no right to publish classified information. *See Snepp*, 444 U.S. at 510 n.3. That point is uncontested. *See* Pl.'s Mem. in Supp. of Mot. for Summ. J. (Pl.'s Mem.) at 9, ECF No. 27-2.

## B. The FBI Properly Classified the Information At Issue Here.

Because Samit has no First Amendment right to publish classified information, this case turns on whether the information that the FBI has prohibited Samit from publishing is properly classified. As the classified declaration submitted in support of this motion explains, it is. *See* SOF ¶ 14; *see also, e.g.*, Wells Decl. ¶¶ 15, 16, 27–32.

Courts must give the "utmost deference" to Executive Branch agencies' classification determinations. *Taylor v. Dep't of Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978)); *see also McGehee,* 718 F.2d at 1149 ("[J]udicial review of CIA classification decisions, by reasonable necessity, cannot second-guess CIA judgments on matters in which the judiciary lacks the requisite expertise."); *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.*, 331 F.3d 918, 928 (D.C. Cir. 2003) ("We . . . reject any attempt to artificially limit the long-recognized deference to the executive on national security issues."); *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially

reasonable concerns."); *Shaffer*, 102 F. Supp. 3d at 10 ("Generally, courts afford deference to Executive Branch classification decisions."). The Constitution designates the President of the United States as the commander-in-chief of the armed forces, and "[the President's] authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power . . . ." *Dep't of Navy v. Egan,* 484 U.S. 518, 527 (1988); *cf. Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("[T]he very nature of executive decisions as to foreign policy is political, not judicial. Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative."); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("[I]n this vast external realm, with its important, complicated, delicate and manifold problems, the President alone has the power to speak or listen as a representative of the nation . . . . [The President] has his agents in the form of diplomatic, consular and other officials. Secrecy in respect of information gathered by them may be highly necessary, and the premature disclosure of it productive of harmful results.").

Executive Branch agencies responsible for foreign affairs and national security—unlike the judiciary—possess the perspective and expertise necessary to assess the need to classify certain information. "Due to the mosaic-like nature of intelligence gathering, what may seem trivial to the uninformed may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in context." *McGehee*, 718 F.2d at 1149 (citations omitted); *see also Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C. Cir. 1982) ("[E]ach individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself.") (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980)). The FBI, unlike the judicial branch, and

unlike Samit, holds the broad view necessary to assess the need for secrecy over the information that Samit seeks to publish. *See Halkin*, 598 F.2d at 8–9 ("It requires little reflection to understand that the business of foreign intelligence gathering . . . is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair. . . . 'The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area.'") (quoting *Marchetti*, 466 F.2d at 1318); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928 ("It is abundantly clear that the government's top counterterrorism officials are well-suited to make this predictive judgment. Conversely, the judiciary is in an extremely poor position to second-guess the executive's judgment in this area of national security.").

Thus, in deciding cases like this one, "[c]ourts must defer to the Government's judgment as to the harmful results of publication." *Shaffer*, 102 F. Supp. 3d at 11. The D.C. Circuit has instructed that a court's review in these matters, while de novo, must give "deference to reasoned and detailed . . . explanations of [the] classification decision." *McGehee*, 718 F.2d at 1148. An agency explanation of its classification determinations suffices if it "justif[ies] censorship with reasonable specificity, demonstrating a logical connection between the deleted information and the reasons for classification." *Id.*

Some of the information that Samit seeks to publish in *Because There* Are *Monsters* is classified under the executive order restricting disclosure of national security information. A series of executive orders issued since World War II establish a system for classifying, safeguarding, and declassifying information that could harm the national security. *See Egan*, 484 U.S. at 527–28 (discussing history). The most recent of these orders, Executive Order 13526, sets out four conditions for the classification of national security information: (1) the information must be

classified by an "original classification authority"; (2) the information must be "owned by, produced by or for, or [be] under the control of" the government; (3) the information must fall within one of the authorized classification categories listed in section 1.4 of the Executive Order; and (4) the original classification authority must "determine[ ] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and must be "able to identify or describe the damage." Exec. Order 13526 § 1.1, 75 Fed. Reg. 707 (Dec. 29, 2009). The information that the FBI has designated as classified under the Executive Order meets these criteria.

### 1. *Original Classification Authority*

The first of the Executive Order's four criteria is that the information at issue must be classified by an "original classification authority," Exec. Order 13526 § 1.1(1), which is "an individual authorized in writing . . . by agency heads or other officials designated by the President, to classify information in the first instance," *id.* § 6.1(gg). The Assistant Director of the FBI's Counterterrorism Division is an original classification authority. Wells Decl. ¶ 2. This official has attested that certain information in Samit's manuscript is properly classified. *See id.* ¶ 27.

### 2. *Governmental Ownership, Production, or Control*

The classified information in Samit's manuscript is also owned by, produced by or for, or is under the control of the government. *See* Exec. Order 13526 § 1.1(2). Samit acknowledges that his manuscript is a "memoir" of his "years assigned to the Minneapolis Joint Terrorism Task Force (JTTF)" and recounts his involvement in both "terrorism" and "national security" investigations as a result of his position as an FBI special agent. Compl. ¶¶ 6, 9. Thus, the classified information in Samit's manuscript was within the purview of the position he held as a government official and belongs to the government. *See Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1371 (4th Cir. 1975)

("[N]either should [plaintiff] be heard to say that he did not learn of information during the course of his employment if the information was in the Agency and he had access to it.").

### 3. *The Section 1.4 Categories*

Section 1.4 of Executive Order 13526 lists the categories of information that may be classified. Exec. Order 13526 §§ 1.1(3), 1.4. As relevant here, those categories include foreign government information. The Wells declaration explains why the information that Samit challenges the classification of fits neatly into this category. Wells Decl. ¶¶ 27–32.

### 4. *Damage to the National Security*

The fourth and final criterion for classified information is that its disclosure "reasonably could be expected to result in damage to the national security." Exec. Order 13526 § 1.1(4). The challenged information in the manuscript is classified at the "SECRET" level, Wells Decl. ¶ 27, *see also id.* ¶ 16, reflecting the government's conclusion that its disclosure could "cause serious damage to the national security," Exec. Order 13526 § 1.2(2). As explained in the classified declaration, the disclosures that Samit seeks to make in his book reasonably could be expected to cause serious damage to the national security. Wells Decl. ¶¶ 27–32. The government cannot provide additional explanation about this anticipated damage on the public record without revealing classified information. In the classified declaration, however, the declarant has "identif[ied]" and "describe[d]" this damage, Exec. Order 13526 §§ 1.1(4), 1.2(2), and his assessments are entitled to deference, *Shaffer*, 102 F. Supp. 3d at 11 ("Courts must defer to the Government's judgment as to the harmful results of publication[.]"). Courts recognize that the potential for damage to national security need not "rise to the level of certainty" to justify classification; instead, classification is appropriate if the risk of damage is "real and serious enough to justify the classification decision." *McGehee*, 718 F.2d at 1150; *see also Halperin*, 629 F.2d

at 149 (recognizing, in the FOIA context, that "any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm" and that "to require an actual showing . . . would be overstepping by a large measure the proper role of a court").

Here, the FBI reasonably expects damage to the national security through the disclosure of foreign government information.   Section 1.4(b) of Executive Order 13526 provides for classification of information concerning cooperative endeavors between the United States government and foreign governments.  Under the Executive Order, the "unauthorized disclosure of foreign government information is presumed to cause damage to the national security." Exec. Order 13526, § 1.1(d).  "It is clear that, even without the presumption of identifiable damage to the national security that is accorded foreign government information, disclosure of such cooperation with foreign agencies could not only damage the [Government's] ability to gather information but could also impair diplomatic relations."  *Malizia v. U.S. Dep't of Just.*, 519 F. Supp. 338, 344 (S.D.N.Y. 1981) (citation omitted).  As explained, the remaining contested information in Samit's manuscript constitutes foreign government information the disclosure of which could reasonably be expected to cause serious damage to national security.  Wells Decl. ¶¶ 27–32.  Accordingly, the government properly classified this information.

### C.   The Classified Information At Issue Has Not Been Declassified or Released.

None of the classified information in Samit's manuscript has been declassified or officially released by the FBI.  To determine whether classified information has been officially released, courts in this Circuit apply three criteria: the classified information sought to be disclosed must (1) be "as specific as the information previously released," (2) "match the information previously disclosed," and (3) have been made public "through an official and documented disclosure."

*Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)); *see also Shaffer*, 102 F. Supp. 3d at 9 (applying these criteria in a prepublication review case). "These criteria are important because they acknowledge the fact that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures." *Shaffer*, 102 F. Supp. 3d at 9 (citation omitted). The D.C. Circuit stringently applies the official public disclosure requirement in cases like this one where the plaintiff seeks the release of classified information. *See Pub. Citizen v. Dep't of State*, 11 F.3d 198, 202 (D.C. Cir. 1993) (cataloging cases and describing "stringency" of the test).

A plaintiff asserting a claim of official release bears the "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar*, 702 F.2d at 1130; *see also Shaffer*, 102 F. Supp. 3d at 9. Merely pointing to public sources will not meet this burden. "[T]he fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm." *Fitzgibbon*, 911 F.2d at 766; *see also id.* at 765 (quoting *Alfred A. Knopf*, 509 F.2d at 1370 ("It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so.")); Exec. Order 13526 § 1.1(c) ("Classified information shall not be declassified automatically as a result of any unauthorized disclosure of identical or similar information.").

Samit asserts that he has provided the FBI with "evidence of specific citations to public, open-source materials . . . upon which he exclusively relied in crafting the disputed portions of his Manuscript." Pls.' Mem. 13. Not so. A declaration submitted in support of Samit's motion for summary judgment asserts that the disputed information on pages 677 to 679 of the manuscript should not be classified because it was allegedly sourced from an unclassified report prepared by

another government agency.  *See* Wells Decl. ¶ 22.  The FBI conducted a thorough search for this purported report and did not locate it.  *Id.* ¶ 24.  The FBI does, however, have an unclassified FBI-generated report that memorializes information provided by a *different* government agency containing unclassified information relating to the event described on pages 677 to 679 of the manuscript.  *Id.* ¶ 25.  As the classified declaration explains, the referenced FBI report does not include the classified information discussed in the manuscript.  *Id.* ¶¶ 25–26, 32.  Instead, the manuscript reveals classified foreign government information that cannot be released for the reasons explained in the classified declaration.  *See id.* ¶¶ 19–32.

## II.    AS AN INITIAL MATTER, THE COURT'S REVIEW IS LIMITED TO IN CAMERA, EX PARTE REVIEW.

As Samit appears to recognize, *see* Pls.' Mem. 15–16, the D.C. Circuit set forth the proper procedure for review of classification determinations in prepublication review cases in *Stillman*. Specifically, the court held that the district court must "determine first whether it can resolve the classification *ex parte*" and "without the assistance of plaintiff's counsel."  *Stillman*, 319 F.3d at 548–49; *see also McGehee*, 718 F.2d at 1149 ("We anticipate that in camera review of affidavits, followed if necessary by further judicial inquiry, will be the norm [in prepublication review cases].");  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (permitting ex parte review of declarations in light of "the primacy of the Executive in controlling and exercising responsibility over access to classified information, and the Executive's 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business") (citation omitted).  Only if the court determines that it cannot resolve the classification issue ex parte and without the assistance of plaintiff's counsel, may it then consider "whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security."  *Stillman*, 319 F.3d at 549.  What is more, *Stillman*

demonstrates that, should a court decide to grant access to classified information to a plaintiff's counsel over the government's objection, the government should first have the opportunity to appeal any such order. *See id.* at 549. Accordingly, the Court can—and should—resolve the parties' cross-motions for summary judgment by following the *Stillman* procedure.

Samit posits that, if the Court is unable to rule upon the FBI's classification determinations after ex parte, in camera review, it may hold a "debate" between Samit and a non-attorney government representative regarding FBI's classification determinations or appoint a special master "to assist with the classification dispute." Pl.'s Mem. 16–20. Both proposals are extraordinary, unprecedented, and the Court need not—and should not—adopt either.

Samit's request for a "debate" before the Court among non-attorneys is as improper as it is unusual. First, it is not endorsed by *Stillman*. As explained, the D.C. Circuit there established the "norm" for prepublication review cases: district courts should conduct an "in camera review of affidavits" followed only "if necessary by further judicial inquiry." 319 F.3d at 548 (quoting *McGehee*, 718 F.2d at 1149). There is no reason to depart from that norm here. Second, the government's classified declaration is afforded substantial deference, *see supra* pp. 8–10, and it sets forth in detail why the redacted information is properly classified. Samit has ample opportunity to explain through written statements why he thinks it is not. There is nothing to be added by a free-ranging, in camera "debate" about the government's classification determinations without representation of counsel, and without appropriate deference to the government's classification determinations.

Nor is there any basis for the Court to appoint a special master. "District judges bear primary responsibility for the work of their courts" and masters "should be appointed only in limited circumstances." Fed. R. Civ. P. 53 advisory committee's note (2003 amendment). Samit

has not shown that this case falls within the limited scenarios warranting a master.  In support of his proposal, Samit relies primarily on *In re Department of Defense*, 848 F.2d 232 (D.C. Cir. 1988). In that case, however, the court appointed a special master only to select representative samples from approximately 14,000 pages of documents and to summarize the parties' arguments for the district court's consideration.  *Id.* at 233–34.  The district court's "Article III role would be preserved" because it would adjudicate whether the information was properly classified without any recommendation from the special master. *Id.* at 234.  Here, by contrast, where the universe of disputed information is limited to three pages, there is plainly no need for a special master to conduct any sampling or to summarize arguments. *See In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 521 (S.D.N.Y. 2021) (distinguishing *In re Department of Defense* and concluding that no special master is necessary where only 100 pages of classified and privileged information were at issue).  The Court is fully competent to evaluate the three pages at issue in this case and render a decision without assistance.

     In the alternative, Samit requests that the Court authorize his litigation counsel to access classified information relevant to this case.  Pls.' Mem. 20–22.  This request is premature, unprecedented, and at this point in the proceeding, foreclosed by binding case law.

     Access to classified information is strictly subject to the discretion of the Executive Branch. In *Department of the Navy v. Egan*, the Supreme Court made clear that "[the President's] authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant."  484 U.S. at 527.  Accordingly, the authority to determine who may have classified information "is committed by law to the appropriate agency of the Executive Branch," which enjoys exclusive responsibility for the protection and control of national security

information. *Id.* Under Executive Order 13526, a person may access classified information only if she or he (1) has received a favorable determination of eligibility for access, (2) signed a nondisclosure agreement, and (3) has a "need-to-know" the information. Exec. Order 13526 § 4.1(a). A "need-to-know" is defined as "a determination within the executive branch in accordance with directives issued pursuant to this order that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." *Id.* § 6.1(dd).

Samit does not allege, nor can he show, that his counsel meets these criteria. *See Egan*, 484 U.S. at 528 ("It should be obvious that no one has a 'right' to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official."). Nor can Samit show a First Amendment interest that would override the government's compelling interest in secrecy. *See Ellsberg v. Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983) ("[O]ur nation's security is too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a protective order."); *Colby v. Halperin*, 656 F.2d 70, 72 (4th Cir. 1981) ("Disclosure to one more person, particularly to one found . . . to be a person of discretion and reliability, may seem of no great moment, but information may be compromised inadvertently as well as deliberately."). Thus, the government's opposition to Samit's request to provide his counsel with access to classified information is not to gain an advantage in litigation, *contra* Pl.'s Mem. 20–21. It is instead intended to preserve the government's compelling interest in protecting the confidentiality of properly classified information.

Moreover, because the Court has not yet reviewed the government's submissions ex parte, and thus cannot yet find any need for assistance from Samit's counsel outweighs the government's

national security interests, Samit's request for his counsel to have access to classified information is premature. *See Boening v. CIA*, 579 F. Supp. 2d 166, 174 (D.D.C. 2008) ("prepublication review cases can and should begin with ex parte and in camera consideration") (citing *Stillman*, 319 F.3d at 548–49). And to the government's knowledge, a plaintiff's counsel has never been granted access to classified information in a prepublication review case. *See, e.g.*, *Stillman*, 517 F. Supp. 2d at 38–39 (deciding case on remand based on ex parte submissions). In any event, for the reasons outlined above, the Executive Branch has not and does not consent to such access by counsel in this case.[2]

### III.    PLAINTIFF'S UNREASONABLE DELAY CLAIM IS MOOT.

Samit does not press the unreasonable delay claim raised in his complaint in his motion for summary judgment, seemingly recognizing that this count is moot following the FBI's completion of its review of Samit's manuscript. But for avoidance of doubt, the Court should grant the government summary judgment on this claim due to mootness.

Even where an action presents a live controversy when filed, the mootness doctrine requires "a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (en banc) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)). Claims alleging

---

[2] Samit also sought, as a separate count, a declaratory judgment that he and his counsel should be given access to secure government computers for this purposes of this litigation. *See* Compl. ¶¶ 38–44. He did not advance any arguments in support of this claim in his motion for summary judgment. Regardless, it should be denied for the same reasons his requests for an in camera hearing without counsel, appointment of a special master, and for his counsel to access classified information should be denied. Nor is there any need for such a declaratory judgment here, particularly with respect to Samit's counsel, who is not authorized to access classified information for the purposes of this case.

unreasonable delay against the government become moot when the government takes the allegedly delayed action. *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1205 (D.C. Cir. 2013) ("Because the complained-of delay has now ended, any constructive deprivation that the delay generated has also necessarily ceased."); *Penn v. Blinken*, No. 21-cv-1055, 2022 WL 910525, at *3 (D.D.C. May 29, 2022) (dismissing as moot claims requesting the adjudication of visa applications after the applications were approved or denied because plaintiffs had "received the precise relief they sought").

Here, Samit alleged that the FBI had unreasonably delayed review of his manuscript because, when he filed this action in October 2022, the FBI had not yet completed that review. Compl. ¶¶ 10–17. That review has long-since been completed. SOF ¶ 7. Courts in this district have dismissed unreasonable delay claims in effectively identical circumstances on multiple occasions. *See Boening*, 579 F. Supp. 2d at 172 (dismissing claim alleging unreasonable delay of a prepublication review as moot because "Plaintiff has already received the final decision that he sought from the Agency's Prepublication Review Board"); *Stillman*, 517 F. Supp. 2d at 36 ("Stillman has already received the final classification decision that he sought from the defendant agencies. Accordingly, this Court lacks subject matter jurisdiction over Stillman's APA claim and dismisses it as moot under Rule 12(b)(1) of the Federal Rules of Civil Procedure."). This Court should follow suit.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment and grant summary judgment for Defendant on all counts.

Dated: June 11, 2024

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

 */s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN
Senior Trial Counsel (D.C. Bar No. 1019782)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel.: (202) 305-0727
Email: leslie.vigen@usdoj.gov

*Counsel for Defendant*

</div>