UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HARRY SAMIT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-3155 (CRC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant.* | ) | |

## CLASSIFIED *IN CAMERA, EX PARTE* DECLARATION OF ROBERT R. WELLS, FEDERAL BUREAU OF INVESTIGATION

(U) I, Robert R. Wells, hereby state and declare as follows, pursuant to 28 U.S.C. § 1746:

1. (U)  I am the Assistant Director of the Counterterrorism Division, Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"). I am responsible for, among other things, directing the conduct of FBI counterterrorism investigations.

2. (U)  In my capacity as Assistant Director of the FBI's Counterterrorism Division, I have been delegated original classification authority by the Attorney General of the United States. See Executive Order ("EO") 13526, Section 1.3(c). As a result, and pursuant to all applicable Executive Orders, I am responsible for the protection of classified information, including the sources, methods, and techniques used by the FBI in the collection of such information. Thus, I have been authorized, pursuant to the responsibilities and obligations as defined in Executive Orders and through the delegation from the Attorney General, to execute declarations and other affidavits in order to protect such classified information.

3. (U)  In my capacity as Assistant Director, I have also been delegated authority by the

Director of the FBI to execute declarations and other affidavits asserting the law enforcement

privilege where, for example, disclosure of information could cause harm to an investigation or

investigative interest of the FBI, could impair the effectiveness of an investigative technique,

method, or procedure of the FBI, or could tend to reveal a confidential source of information. As

Assistant Director, I am also authorized to execute declarations and other affidavits asserting the

attorney work product privilege and the deliberative process privilege.

4. (U)  The matters stated herein are based on personal knowledge and information

furnished to me in my official capacity by employees of the FBI, as well as on my background,

training, and experience related to FBI criminal and national security investigations, my review

and consideration of documents, and my judgment as Assistant Director of the Counterterrorism

Division. I have reached my conclusions in accordance therewith.

## (U) PURPOSE OF THIS DECLARATION

5. (U)  I submit this declaration in support of Defendant U.S. Department of Justice's

("Defendant") opposition to Plaintiff Harry Samit's ("Plaintiff") motion for summary judgment

and cross-motion for summary judgment. In connection with its opposition to Plaintiff's motion

for summary judgment and cross-motion for summary judgment, Defendant seeks to prevent

Plaintiff, a former FBI Special Agent, from making an unauthorized disclosure of classified

national security information that was provided to the FBI by a foreign government. As set forth

further below, Plaintff intends to publish a manuscript, entitled "*Because There Are Monsters*."

The manuscript details Plaintiff's experience as a Special Agent, including his assignment to the

FBI's Joint Terrorism Task Force at the Minneapolis Field Office prior to the events of

September 11, 2001. The manuscript contains classified national security information that was provided to the FBI by a foreign government. In this declaration, I provide, among other things, background regarding the information that Plaintiff seeks to disclose, describe this information, and explain why disclosure of this information is likely to cause harm to national security and the FBI's law enforcement and counterterrorism mission.

6. (U) Before addressing this matter in more detail, I briefly set forth the manner in which the paragraphs of this declaration have been marked. Each paragraph in this declaration is marked, immediately after the number of the paragraph, with letters in parentheses indicating the level of classification and restrictions on dissemination applicable to that paragraph. Paragraphs marked with a "U" are unclassified. Paragraphs marked with an "S" are classified SECRET. Designations of "NOFORN" or "NF" reflect information that may not be released to foreign governments, foreign nationals, foreign organizations, or non-U.S. citizens without the permission of an appropriate official at the originating organization.

8. (U) Because this declaration is itself a classified document, it is being made available to the Court solely for *in camera, ex parte* review. The classified contents of this declaration (including classified exhibits to this declaration) must not be disseminated beyond the Court and any cleared law clerks, the assigned Classified Information Security Officer, the cleared

attorneys for the U.S. Government, or any other person who has been specifically approved by the DOJ for access to this declaration on a need-to-know[1] basis, and also must not be incorporated into any publicly filed document or order or document residing on an unclassified system or device. The FBI does not consent to the disclosure of this declaration to Plaintiff or Plaintiff's counsel.

## (U) PLAINTIFF'S NONDISCLOSURE AGREEMENTS

9. (U)  Plaintiff is a former FBI Special Agent who joined the FBI in 1999 and retired in 2020.  As a condition of his employment with the FBI, Plaintiff received a TOP SECRET security clearance and signed several agreements emphasizing his duty to protect all FBI information, whether classified or unclassified, from unauthorized disclosure.  Copies of those agreements are attached.  Briefly, as relevant here, the attached agreements are:

> a. (U) Two Employment Agreements with the FBI (FD-291), signed by Plaintiff
> on on January 19, 1999 and July 1, 2005  (attached as Exhibit A).  The July 1,
> 2005  agreement states that "I will not reveal, by any means, any information or
> material from or related to FBI files or any other information acquired by virtue of
> my official employment to any unauthorized recipient without official written
> authorization by the FBI."  Exhibit A, July 1, 2005 agreement, at ¶ 3.  The July 1,
> 2005 agreement  further states that "[v]iolations of this employment agreement
> may . . . subject me to personal liability in a civil action at law, including but not
> limited to injunctive relief, the imposition of a constructive trust, and the
> disgorging of any profits arising from any unauthorized publication or

---

[1] (U) Executive Order 13526, Sec. 4.1 (a) (3).

disclosure." *Id.* at ¶ 6; *see also* Exhibit A, January 19, 1999 agreement at ¶¶ 2 and 4.

b. (U) Three Classified Information Nondisclosure Agreements (SF-312), signed by Plaintiff on January 20, 1999, May 17, 2004, and May 20, 2019 (attached as Exhibit B). The May 20, 2019 agreement states that "I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of [the] information or last granting me a security clearance that such disclosure is permitted." Exhibit B, May 20, 2019 agreement, at ¶ 3. It also states: "I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I can disclose it . . . ." *Id.* Further, the May 20, 2019 agreement assigns "to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication or revelation of classified information not consistent with the terms of this Agreement." *Id.* at ¶ 5. The May 20, 2019 agreement also acknowledges

5

"that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement." *Id.* at ¶ 6; *see also* Exhibit B, May 17, 2004 agreement, at ¶¶ 3, 5, 6 and January 20, 1999 agreement, at ¶¶ 3, 5, 6.

c. (U) Three Sensitive Compartmented Information Nondisclosure Agreements (Form 4414), signed by Plaintiff on August 29, 2002, May 17, 2004, and May 20, 2019. (attached as Exhibit C). The May 20, 2019 agreement provides that "I will never divulge anything marked as SCI [Sensitive Compartmented Information] or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI." Exhibit C, May 20, 2019 agreement, at ¶ 3; *see also* Exhibit C, May 17, 2004 agreement, at ¶ 3 and August 29, 2002 agreement, at ¶ 3.

### (U) SUBMISSION OF THE MANUSCRIPT TO THE FBI

10.  (U)  In April 2021, Plaintiff submitted his approximately 900-page manuscript to the FBI's Prepublication Review Office ("FBI-PRO").  A significant portion of the manuscript discusses Plaintiff's involvement with the FBI's counterterrorism investigation of three individuals:  Mohammed Warsame, Mohamed Kamal Elzahabi,[2] and Zacarias Moussaoui. Plaintiff filed the present action on October 17, 2022.  At the time he filed this action, Plaintiff

---

[2] (U)  In various documents, including documents file in the criminal case against Elzahabi discussed below, different spellings are used for his first name and his last name.  This declaration uses the spelling indicated above.

had received only partial results of the FBI's review of his manuscript. In addition, Plaintiff

administratively appealed certain aspects of the FBI's pre-litigation response. The parties

therefore jointly moved to stay Defendant's answer deadline and proposed to provide periodic

reports on the status of the FBI's ongoing review of the manuscript and processing of Plaintiff's

appeal The Court granted this motion. During the stay, the FBI provided additional responses to

Plaintiff, Plaintiff submitted additional appeals, and the FBI responded to those appeals. As of

March 31, 2023, the FBI had completed its review of the manuscript and responded to all of

Plaintiff's appeals.

11. (U) Given, among other things, the length and subject matter of the manuscript,

PRO's prepublication review of the manuscript was an extensive and time-consuming

undertaking. Following Plaintiff's initial submission of the manuscript, Plaintiff and FBI-PRO

engaged in an extended back and forth concerning what information in the manuscript is, and is

not, appropriate for public disclosure. In connection with this process, FBI-PRO made

redactions to the portions of the manuscript to which the FBI objected under the standards in the

FBI's prepublication review policy. In addition, the FBI had three separate meetings with

Plaintiff in an effort to narrow the areas of disagreement concerning the FBI's redactions.

Ultimately, the areas of disagreement were narrowed.

12. (U) As of approximately the end of the 2023, Plaintiff and FBI-PRO had narrowed

the areas of dispute to two relatively small, discrete portions of the manuscript. In May 2024, the

FBI provided Plaintiff with revisions to one of the two disputed portions -- pertaining to the

section of the manuscript concerning the FBI's investigation of Mohammed Warsame -- and

Plaintiff accepted these revisions. As a result, the only portion that remains in dispute consists of

7

approximately three pages of the manuscript -- pages 677 to 679 -- pertaining to the FBI's

investigation of Mohamed Elzahabi.

## (U) THE FBI'S INVESTIGATION OF MOHAMED ELZAHABI AND THE JUNE 2000 FLIGHT

14. (U) In July 2004, Elzahabi was indicted on two counts of making a material false

statement. *See United States v. Mohamed Kamal Elzahabi*, Case 0:04-cr-00282 (D. Minn.).  In

December 2005, a superseding indictment charged Elzahabi with two counts of making a

material false statement (Counts 1 and 2) and three counts of possessing a fraudulent

immigration document (Counts 3, 4, and 5).  The court subsequently severed Counts 1 and 2

from Counts 3, 4, and 5.  The case proceeded to trial on the possession of a fraudulent

immigration document charges, and, on August 3, 2007, Elzahabi was convicted on all three

counts.  The court later dismissed the making a material false statement charges pursuant to a

motion by the government.





## (U) THE MANUSCRIPT'S DISCUSSION OF
## THE JUNE 2000 FLIGHT





### (U) PLAINTIFF'S CONTENTIONS

22. ▮▮▮▮▮ I have been advised that, in this litigation, Plaintiff asserts that he should be permitted to publish his discussion of the June 2000 flight on the grounds that this information is unclassified.  Pertinent to this, Plaintiff has submitted a declaration from Anders

Folk, which states that Folk is a former federal prosecutor and served as the lead prosecutor in

the *United States v. Mohamed Elzahabi* criminal case. Regarding the portion of the manuscript

that discusses the Abdelrahman/⬛⬛⬛ flight, the Folk decaration states in pertinent part as

follows:

> This flight was part of the government's investigation and
> related to the prosecution [of Elzahabi]. The FAA interviewed
> both Abdelrahman and his co-pilot [⬛⬛⬛ subsequent to their
> June 2000 ⬛⬛⬛⬛ flight ⬛⬛⬛⬛.
> The information concerning this event, and specifically the FAA
> report was, to my recollection, always unclassified and I believe it
> was a part of the Elzahabi file, both at the FBI and the U.S. Attorney's
> Office.[6]

24. (U) In addition, the FBI has conducted a thorough search of its holdings and has not

located a report from the FAA concerning the June 2000 flight.

25. (U) However, the FBI does have an unclassified FBI-generated report that

memorializes information that U.S. Customs Service provided to the FBI about the June 2000

flight. The report is attached hereto as Exhibit G.[7] The FBI report states that U.S. Customs

Service advised the FBI:  that Abdelrahman (referred to in the report as "Abdel Zahabs") and

---

[7] (U) Although the report memorializing the information that U.S. Customs Service provided to the FBI is
unclassified, the report is included within a document -- the attached Exhibit G -- that is classified.

███████ landed a Cessna aircraft at the Accomack County (Virginia) Airport on June 8, 2000;

that the flight originated in Canada and was destined for Miami, Florida; and that Abdelrahman

and ███████ arrived at the Accomack County Airport following a stop in Burlington, Vermont.

According to the FBI report, information indicated that Abdelrahman and ███████ "had been

landing at small, out-of-the way airports, paying cash for fuel, and only taking on fuel for

approximately two hours of flying time at each stop."  The FBI report further states that, "[d]ue

to the suspicious nature of [Abdelrahman's and ███████ activities, the aircraft was scanned for

explosives; however, no dogs to detect explosives were utilized.  No check of the fuel tanks was

conducted."

## (U) THE MANUSCRIPT REVEALS CLASSIFIED FOREIGN GOVERNMENT INFORMATION

28. (U) In unclassified terms, I can state that maintaining the confidentiality of foreign

government information is critical to sustaining ongoing, productive cooperation with friendly

foreign nations in the field of national security and international criminal investigations.

Releasing information from that service would compromise established confidentiality

14

agreements, and thereby reasonably could be expected to strain relations between the United States and that foreign government. The release also could have a chilling effect on the free flow of vital information to U.S. intelligence and law enforcement agencies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _10_ day of _June_ 2024.

Robert R. Wells
Assistant Director, Counterterrorim Division
Federal Bureau of Investigation

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action
No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION
OF ROBERT R. WELLS, FEDERAL BUREAU OF
INVESTIGATION

Exhibit A

REDACTED Copy

# FBI EMPLOYMENT AGREEMENT

As consideration for my employment, or continued employment, by the Federal Bureau Investigation (FBI), United States Department of Justice, I hereby agree to be governed by and to comply with the following provisions:

(1) Unauthorized disclosure, misuse, or negligent handling of information contained in the files of the FBI or which I may acquire as an employee of the FBI could impair national security, place human life in jeopardy, result in the denial of due process, prevent the FBI from effectively discharging its responsibilities, or violate federal law. I understand that being granted access to such information, I am accepting a position of special trust and am obligated to protect such information from unauthorized disclosure.

(2) All information acquired by me in connection with my official duties with the FBI and all official material to which I have access remain the property of the United States of America. I will surrender upon demand by the FBI, or upon my separation from the FBI, all materials containing FBI information in my possession.

(3) I will not reveal, by any means, any information or material from or related to FBI files or any other information acquired by virtue of my official employment to any unauthorized recipient without official written authorization by the FBI.

(4) Prior to any disclosure, I will seek a determination whether the information may be disclosed. I agree to be bound by the guidelines governing prepublication review found in the FBI Manual of Administrative Operations and Procedures (MAOP) as those procedures may from time to time be amended. I understand that, in this context, "publication" includes disclosure of information to anyone by any means. I will submit for review the full text of any proposed disclosure addressed by the MAOP or this employment agreement as required by the MAOP at least thirty (30) working days prior to the proposed publication.

(5) I understand that these restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order No. 12958; Section 7211 of Title 5, U.S.C. (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the FBI Whistleblower Protection Act (5 U.S.C. 2303, 28 C.F.R. Part 27) (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential government agents); and the statutes which protect against disclosure that may compromise the national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling. I further understand, however, that any such information that is disclosed pursuant to applicable federal law continues to be subject to this agreement for all other purposes, and disclosure to the appropriate entities provided by federal law does not constitute public disclosure or declassification, if applicable, of such information.

(6) Violations of this employment agreement may constitute cause for revocation of my security clearance, subject me to criminal sanction, disciplinary action by the FBI, including dismissal, and subject me to personal liability in a civil action at law, including but not limited to injunctive relief, the imposition of a constructive trust, and the disgorging of any profits arising from any unauthorized publication or disclosure. In that regard, I hereby irrevocably assign all rights, title, and interests in any such profits to the United States.

(7) I have read this agreement carefully. Each of the numbered paragraphs of this agreement is severable and if a court should find any of these paragraphs to be unenforceable, I agree that the remaining provisions will continue in full force.

(8) I have read and understand the MAOP prepublication guidelines that are attached.

(9) I accept the above provisions as conditions of my employment or continued employment by the FBI. I agree to comply with these provisions both during my employment in the FBI and following termination of such employment.

_____ (SEAL)
(Signature)

Witnessed and accepted on behalf of the Director, FBI, on __07/01/2005__, by
(Date)

Enclosure

67- 1166548

FD-291 (Rev. 4-27-83)



## EMPLOYMENT AGREEMENT

As consideration for employment in the Federal Bureau of Investigation (FBI), United States Department of Justice, and as a condition for continued employment, I hereby declare that I intend to be governed by and I will comply with the following provisions:

(1) That I am hereby advised and I understand that Federal Law including statutes, regulations issued by the Attorney General and Orders of the President of the United States prohibit loss, misuse or unauthorized disclosure or production of information in the files of the FBI.

(2) I understand that unauthorized disclosure of information in the files of the FBI or information I may acquire as an employee of the FBI could result in impairment of national security, place human life in jeopardy, or result in the denial of due process to a person or persons who are subjects of an FBI investigation, or prevent the FBI from effectively discharging its responsibilities.  I understand the need for this secrecy agreement; therefore, as consideration for employment I agree that I will never divulge, publish, or reveal either by word or conduct, or by other means disclose to any unauthorized recipient without official written authorization by the Director of the FBI or his delegate, any information from the investigatory files of the FBI or any information relating to material contained in the files, or disclose any information or produce any material acquired as a part of the performance of my official duties or because of my official status.  The burden is on me to determine, prior to disclosure, whether information may be disclosed and in this regard I agree to request approval of the Director of the FBI in each such instance by presenting the full text of my proposed disclosure in writing to the Director of the FBI at least thirty (30) days prior to disclosure.  I understand that this agreement is not intended to apply to information which has been placed in the public domain or to prevent me from writing or speaking about the FBI but it is intended to prevent disclosure of information where disclosure would be contrary to law, regulation or public policy.  I agree the Director of the FBI is in a better position than I to make that determination;

(3) I agree that all information acquired by me in connection with my official duties with the FBI and all official material to which I have access remains the property of the United States of America, and I will surrender upon demand by the Director of the FBI or his delegate, or upon separation from the FBI, any material relating to such information or property in my possession;

(4) That I understand unauthorized disclosure may be a violation of Federal law and prosecuted as a criminal offense and in addition to this agreement may be enforced by means of an injunction or other civil remedy.

I accept the above provisions as conditions for my employment and continued employment in the FBI.  I agree to comply with these provisions both during my employment in the FBI and following termination of such employment.

_____
(Signature)

HARRY  M.  SAMIT

Witnessed and accepted in behalf of the Dire

_January 19_____, 19 _99_,

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action
No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION
OF ROBERT R. WELLS, FEDERAL BUREAU OF
INVESTIGATION

Exhibit B

REDACTED Copy

# CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

| AN AGREEMENT BETWEEN | Harry Samit | AND THE UNITED STATES |
|---|---|---|

*(Name of Individual - Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 13526, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 13526, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of sections 641, 793, 794, 798, *952 and 1924, title 18, United States Code; *the provisions of section 783(b), title 50, United States Code; and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of sections 793 and/or 1924, title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

*(Continue on reverse.)*

11. These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order No. 13526 (75 Fed. Reg. 707), or any successor thereto section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); section 2302(b) (8) of title 5, United States Code, as amended by the Whistleblower Protection Act of 1989 (governing disclosures of illegality, waste, fraud , abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents); sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the inspectors general of the Intelligence Community. and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403-3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403g(d)(5) and 403q(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress); and the statutes which protect against disclosure that may compromise the national security, including sections 641, 793, 794, 798, *952 and 1924 of title 18, United States Code, and *section 4 (b) of the Subversive Activities Control Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions, and liabilities created by said Executive Order and listed statutes are incorporated into this agreement and are controlling.

12. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Part 2001 , section 2001 .80(d)(2) ) so that I may read them at this time, if I so choose.

*NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

| SIGNATURE | DATE | SOCIAL SECURITY NUMBER *(See Notice below)* |
|---|---|---|
| | 5/20/19 | |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) *(Type or print)*

Minneapolis FBI
1501 Freeway Boulevard
Brooklyn Center, MN 55430

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |

| SIGNATURE | DATE | SIGNATURE | DATE |
|---|---|---|---|
| | 5/20/19 | | 5/20/19 |

| NAME AND ADDRESS *(Type or print)* | NAME AND ADDRESS *(Type or print)* |
|---|---|
| Minneapolis FBI 1501 Freeway Boulevard Brooklyn Center, MN 55430 | Minneapolis FBI 1501 Freeway Boulevard Brooklyn Center, MN 55430 |

### SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|
| | 04/24/2020 |

NAME OF WITNESS *(Type or print)*

**NOTICE**: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Number (SSN) is Public Law 104-134 (April 26, 1996). Your SSN will be used to identify you precisely when it is necessary to certify that you have access to the information indicated above or to determine that your access to the information indicated has been terminated. Furnishing your Social Security Number, as well as other data, is voluntary, but failure to do so may delay or prevent you being granted access to classified information.

STANDARD FORM 312 BACK (Rev. 7-2013)

# CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

AN AGREEMENT BETWEEN     HARRY M. SAMIT     AND THE UNITED STATES

*(Name of Individual — Printed or typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 12958, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in Sections 1.1, 1.2, 1.3 and 1.4(e) of Executive Order 12958, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of Sections 641, 793, 794, 798, *952 and 1924, Title 18, United States Code, *the provisions of Section 783(b), Title 50, United States Code, and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of Sections 793 and/or 1924, Title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

*(Continue on reverse.)*

NSN 7540-01-280-5499
Previous edition not usable

312-103



STANDARD FORM 312 (Rev. 1-00)
Prescribed by NARA/ISOO
32 CFR 2003. E.O. 12958



10. These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12958, Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b) (8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including Sections 641, 793, 794, 798, 952 and 1924 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

11. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this agreement and its implementing regulation (32 CFR Section 2003.20) so that I may read them at this time, if I so choose.

| SIGNATURE | DATE | SOCIAL SECURITY NUMBER (See Notice below) |
|---|---|---|
| | 5/17/04 | |

ORGANIZATION  (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) (Type or print)

FBI  MINNEAPOLIS

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |
| SIGNATURE   DATE 5/17/04 | SIGNATURE   DATE 5/17/04 |
| NAME AND ADDRESS (Type or print) FBI—minneopolis | NAME AND ADDRESS (Type or print) FBI—minneapolis |

## SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information, and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|
| | |

| NAME OF WITNESS (Type or print) | SIGNATURE OF WITNESS |
|---|---|
| | |

**NOTICE:** The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above or 2) determine that your access to the information indicated has terminated. Although disclosure of your SSN is not mandatory, your failure to do so may impede the processing of such certifications or determinations, or possibly result in the denial of your being granted access to classified information.

*NOT APPLICABLE TO NON-GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

FPI-SST                                                                                          STANDARD FORM 312 BACK (Rev. 1-00)

## CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT

| AN AGREEMENT BETWEEN | HARRY  M.  SAMIT | AND THE UNITED STATES |

(Name of Individual – Printed or typed)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to classified information. As used in this Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 12356, or under any other Executive order or statute that prohibits the unauthorized disclosure of information in the interest of national security; and unclassified information that meets the standards for classification and is in the process of a classification determination as provided in Sections 1.1 and 1.2(e) of Executive Order 12356, or under any other Executive order or statute that requires protection for such information in the interest of national security. I understand and accept that by being granted access to classified information, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand these procedures.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause damage or irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of the information or last granting me a security clearance that such disclosure is permitted. I understand that if I am uncertain about the classification status of information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above. I further understand that I am obligated to comply with laws and regulations that prohibit the unauthorized disclosure of classified information.

4. I have been advised that any breach of this Agreement may result in the termination of any security clearances I hold; removal from any position of special confidence and trust requiring such clearances; or the termination of my employment or other relationships with the Departments or Agencies that granted my security clearance or clearances. In addition, I have been advised that any unauthorized disclosure of classified information by me may constitute a violation, or violations, of United States criminal laws, including the provisions of Sections 641, 793, 794, 798, and *952, Title 18, United States Code, *the provisions of Section 783(b), Title 50, United States Code, and the provisions of the Intelligence Identities Protection Act of 1982. I recognize that nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

5. I hereby assign to the United States Government all royalties, remunerations, and emoluments that have resulted, will result or may result from any disclosure, publication, or revelation of classified information not consistent with the terms of this Agreement.

6. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement.

7. I understand that all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law. I agree that I shall return all classified materials which have, or may come into my possession or for which I am responsible because of such access: (a) upon demand by an authorized representative of the United States Government; (b) upon the conclusion of my employment or other relationship with the Department or Agency that last granted me a security clearance or that provided me access to classified information; or (c) upon the conclusion of my employment or other relationship that requires access to classified information. If I do not return such materials upon request, I understand that this may be a violation of Section 793, Title 18, United States Code, a United States criminal law.

8. Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.

9. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect.

10. These restrictions are consistent with and do not supersede, conflict with or otherwise alter the employee obligations, rights or liabilities created by Executive Order 12356; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including Sections 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

( Continue on reverse.)

NSN 7540-01-280-5499
Previous edition not usable.

312–102

STANDARD FORM 312 (REV. 1-91)
Prescribed by GSA/ISOO
32 CFR 2003, E.O. 12356

File: 67E-1166548 Sub S

11. I have read this Agreement carefully and my questions, if any, have been answered. I acknowledge that the briefing officer has made available to me the Executive Order and statutes referenced in this Agreement and its implementing regulation (32 CFR Section 2003.20) so that I may read them at this time, if I so choose.

| SIGNATURE | DATE | SOCIAL SECURITY NUMBER (See Notice below) |
|---|---|---|
| *Harry M. Samit* | 1/20/99 | |

ORGANIZATION (IF CONTRACTOR, LICENSEE, GRANTEE OR AGENT, PROVIDE: NAME, ADDRESS, AND, IF APPLICABLE, FEDERAL SUPPLY CODE NUMBER) (Type or print)

FBI Academy
NAC 99-5

| WITNESS | ACCEPTANCE |
|---|---|
| THE EXECUTION OF THIS AGREEMENT WAS WITNESSED BY THE UNDERSIGNED. | THE UNDERSIGNED ACCEPTED THIS AGREEMENT ON BEHALF OF THE UNITED STATES GOVERNMENT. |

| | DATE | | DATE |
|---|---|---|---|
| | 1/20/99 | | 2/7/99 |

NAME AND ADDRESS (Type or print)

FBI ACADEMY
NAC 99-5

NAME AND ADDRESS (Type or print)

FBIHQ - TSU
WASH, DC

## SECURITY DEBRIEFING ACKNOWLEDGEMENT

I reaffirm that the provisions of the espionage laws, other federal criminal laws and executive orders applicable to the safeguarding of classified information have been made available to me; that I have returned all classified information in my custody; that I will not communicate or transmit classified information to any unauthorized person or organization; that I will promptly report to the Federal Bureau of Investigation any attempt by an unauthorized person to solicit classified information; and that I (have) (have not) (strike out inappropriate word or words) received a security debriefing.

| SIGNATURE OF EMPLOYEE | DATE |
|---|---|
| | |

| NAME OF WITNESS (Type or print) | SIGNATURE OF WITNESS |
|---|---|
| | |

NOTICE: The Privacy Act, 5 U.S.C. 552a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above or 2) determine that your access to the information indicated has terminated. Although disclosure of your SSN is not mandatory, your failure to do so may impede the processing of such certifications or determinations, or possibly result in the denial of your being granted access to classified information.

\* NOT APPLICABLE TO NON–GOVERNMENT PERSONNEL SIGNING THIS AGREEMENT.

STANDARD FORM 312 BACK (REV. 1–91)

FPI-SST

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action
No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION
OF ROBERT R. WELLS, FEDERAL BUREAU OF
INVESTIGATION

Exhibit C

REDACTED Copy

Apply appropriate classification level and any control markings (if applicable) when filled in.

# (U) SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement between      **Harry Samit**      and the United States.

*(Name – Printed or Typed)*

1. (U) Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in process of a classification determination under the standards of Executive Order 13526 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. (U) I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. (U) I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. (U) In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation with, or show it to, anyone who is not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. (U) I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. (U) I have been advised that any breach of this Agreement may result in my termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. (U) I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorney's fees incurred by the United States Government may be assessed against me if I lose such action.

8. (U) I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. (U) Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed on me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. (U) Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other

Apply appro... e classification level and any control markings (if ap... le) when filled in.

conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. (U) I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798 and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 13526, as amended, so that I may read them at this time, if I so choose.

12. (U) I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. (U) These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.

14. (U) These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order13526; or any successor thereto, Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosures to Congress by members of the Military); Section 2302(b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosure of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C. 421 et seq.) (governing disclosures that could expose confidential Government agents), sections 7(c) and 8H of the Inspector General Act of 1978 (5 U.S.C. App.) (relating to disclosures to an inspector general, the inspectors general of the Intelligence Community; and Congress); section 103H(g)(3) of the National Security Act of 1947 (50 U.S.C. 403–3h(g)(3) (relating to disclosures to the inspector general of the Intelligence Community); sections 17(d)(5) and 17(e)(3) of the CIA Act of 1949 (50 U.S.C. 403q(d)(5) and 403q(e)(3)) (relating to disclosures to the Inspector General of the Central Intelligence Agency and Congress); and the statutes which protect agent disclosure which may compromise the national security, including Section 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 4(b) of the Subversive Activities Control Act of 1950 (50 U.S.C. Section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

15. (U) This Agreement shall be interpreted under and in conformance with the law of the United States.

16. (U) I make this Agreement without any mental reservation or purpose of evasion.

_____ Signature          05/20/2019 Date

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information

WITNESS and ACCEPTANCE: _____     5/20/19 Date

### SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

| SI | G | HCS-P | | |
|----|---|-------|--|--|
| TK | HCS | | | |

(Special Access Programs by Initials Only)

[redacted] SSN (See Notice Below)          Harry Samit — Printed or Typed Name          Minneapolis FBI — Organization

**BRIEF** Date 5/20/19

I hereby acknowledge that I was briefed on the above SCI Special Access Program(s):

_____ Signature of Individual Briefed

**DEBRIEF** Date 04/24/2020

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Program(s):

_____ Signature of Individual Briefed

I certify that [redacted] the above date was in accordance with relevant SCI procedures.

_____ ng Officer          SSN (See notice below)          Minneapolis FBI

Printed or Typed Name          Organization (Name and Address)

(U) NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397, as amended. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

**FORM 4414** (Rev. 12-2013)                Page 2 of 2

## SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement Between _____ HARRY M. SAMIT _____ and the United States
*(Name – Printed or Typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs. hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI): I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in the process of a classification determination under the standards of Executive Order 12958 or other Executive order or statute. I understand and accept that by being granted access to SCI. special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI. including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it. and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI. whether or not I am still employed by or associated with that Department or Agency or a contractor thereof. in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI. or related to or derived from SCI. is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI. I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form. including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI. that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793. 794. 798. and 952. Title 18. United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including. but not limited to. application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination. I do not now, nor will I ever, possess any right, interest. title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access. upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request. I understand this may be a violation of Section 793. Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI. I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI. and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable. all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions. if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793. 794. 798. and 952 of Title 18. United States Code, and Section 783(b) of Title 50, United States Code. and Executive Order 12958, as amended. so that I may read them at this time, if I so choose.

FORM
2-97   4414   :Replaces Form 4355
which is obsolete and
will not be used)

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12958; section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

_____  
Signature

05/17/04  
Date

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: _____

5/17/04  
Date

---

# SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

| SI | TK | G | HCS | |
|----|----|----|-----|--|

_____  
(Special Access Programs by Initials Only)

| | HARRY M. SAMIT | FBI |
|--|----------------|-----|
| SSN (See Notice Below) | Printed or Typed Name | Organization |

| **BRIEF** · DATE 05/17/04 | **DEBRIEF** DATE_____ |
|---|---|
| I hereby acknowledge that I was briefed on the above SCI Special Access Programs(s): | Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Programs(s): |
| _____ Signature of Individual Briefed | _____ Signature of Individual Debriefed |

I certify that the briefing presented by me on the above date was in accordance with relevant SCI procedures.

SSN (See Notice Below)

FBI  miruerpolis

_____  
Printed or Typed Name

Organization (Name and Address)

---

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information indicated has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

SFN _____

## SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement Between _____ HARRY M. SAMIT _____ and the United States
                                   *(Name – Printed or Typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in the process of a classification determination under the standards of Executive Order 12958 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 12958, as amended, so that I may read them at this time, if I so choose.

FORM 4414  (Replaces Form 4355
2-97          which is obsolete and
              will not be used)

67E-HQ-1166548    **File in Sub S**

11/pks

12. I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have Case 1:22-cv-03135-CRC Document 31-2 Filed 06/11/24 Page 33 of 37 existence of this Agreement.

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12958; section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats; the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

_Signature_ 08/29/02 _Date_

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: 8/29/02 _Date_

# SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

SI     TK     G     HCS

(Special Access Programs by Initials Only)

HARRY M. SAMIT     FBI

SSN (See Notice Below)     Printed or Typed Name     Organization

**BRIEF** DATE 08/29/02     **DEBRIEF** DATE_____

I hereby acknowledge that I was briefed on the above SCI Special Access Programs(s):

_Signature of Individual Briefed_

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Programs(s):

_Signature of Individual Debriefed_

above date was in accordance with relevant SCI procedures.

SSN (See Notice Below)

FBI - Minneapolis

Printed or Typed Name     Organization (Name and Address)

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information indicated has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION OF ROBERT R. WELLS, FEDERAL BUREAU OF INVESTIGATION

Exhibit D - CLASSIFIED, LODGED FOR EX PARTE IN CAMERA REVIEW

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action
No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION
OF ROBERT R. WELLS, FEDERAL BUREAU OF
INVESTIGATION

Exhibit E - CLASSIFIED, LODGED FOR EX PARTE IN
CAMERA REVIEW

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action
No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION
OF ROBERT R. WELLS, FEDERAL BUREAU OF
INVESTIGATION

Exhibit F - CLASSIFIED, LODGED FOR EX PARTE IN
CAMERA REVIEW

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Harry Samit v. U.S. Department of Justice, Civil Action
No. 22-3155 (CRC) (D.D.C.)

CLASSIFIED IN CAMERA, EX PARTE DECLARATION
OF ROBERT R. WELLS, FEDERAL BUREAU OF
INVESTIGATION

Exhibit G - CLASSIFIED, LODGED FOR EX PARTE IN
CAMERA REVIEW